A02A2071. LIGHTEN v. THE STATE.
(576 SE2d 658)

MIKELL, Judge.

Derrick Laman Lighten was indicted for armed robbery, burglary, kidnapping, aggravated assault, and possession of a firearm by a convicted felon. He was convicted of burglary and sentenced to fifteen years in prison and five years on probation. On appeal, Lighten contends that (1) the evidence was insufficient to support his conviction; (2) a witness's statement was improperly admitted under the necessity exception to the rule against hearsay; (3) his motion to suppress evidence was erroneously denied; and (4) bad character testimony was improperly admitted. Finding no harmful error, we affirm the conviction.

1. OCGA § 16-7-1 (a) provides: "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any build-

ing." In considering the sufficiency of the evidence to support Lighten's burglary conviction, we construe the evidence in a light most favorable to the jury's verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

So viewed, the evidence shows that on March 29, 1999, a masked gunman appeared in an Ingles store in Louisville shortly after the last customer left and the doors had been locked. Ruby Davis, the manager, testified that the gunman "came out of nowhere." The only other person in the store, Tau-Wanda Freeman, the bookkeeper, testified that she had just finished counting the day's cash receipts when she looked up and saw the gunman. Freeman screamed and fell down as she tried to back away from the man. He ordered her to get on her knees and to put the store's cash in a trash can. Freeman did as she was told. Davis and Freeman testified that the gunman was holding a gun and a walkie-talkie and was wearing a ski mask, camouflage pants, boots, a black leather jacket, and black leather gloves.

According to Davis, while she and Freeman were putting the money in the can, the gunman spoke into his walkie-talkie, saying "Unit One to Unit Two, mission accomplished." Afterward, he forced Davis to unlock the back door, and a second man emerged from the bushes carrying a sawed-off shotgun. He pushed the women inside the store and kept cocking the gun. This man forced the victims into the cooler and threatened to kill them if they came out. Davis testified that she and Freeman remained in the cooler for 30 minutes and then ran to the gas station across the street and called the police.

Georgia Bureau of Investigation (GBI) agent Patrick Morgan responded to the store to assist local law enforcement authorities in investigating the crime scene. He noted a ceiling tile lying on the floor of the men's restroom. GBI special agent Stephen Foster, a crime scene technician, testified that he found numerous shoe print impressions on the bathroom floor, including an entire tread where the word "America" or "American" could be seen in the center of the shoe. In addition, Agent Foster found fingerprints approximately seven feet off the ground on a partition wall separating the men's and women's bathrooms. A ceiling tile was missing from the area near the partition wall. Agent Morgan testified that based on the location of the fingerprints near the missing tile, as well as the victims' statements that no one had entered the store after it was locked, he suspected that the perpetrator must have hidden above the ceiling. The agents climbed into the attic, where they found two drink bottles near the hole created by the missing tile. Fingerprints taken from

---

[1] *Brooks v. State*, 252 Ga. App. 389, 390 (3) (556 SE2d 484) (2001).

one of the bottles as well as the bathroom wall were determined to belong to Lighten.

Agent Morgan obtained a search warrant for the home where Lighten resided with his sister. A pair of boots with the word "America" on the sole was found on the floor of the laundry room, which was adjacent to Lighten's bedroom. Lighten claimed that the boots did not belong to him. He offered no explanation for the presence of his fingerprints on the drink bottle and the bathroom wall in Ingles.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[2] "Questions of reasonableness are generally for the fact-finder and where the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, the appellate court will not disturb the fact-finder's guilty verdict unless it is unsupportable as a matter of law."[3] In this case, the circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of Lighten's guilt. Although Lighten testified that he often shopped in the store, his testimony concerning whether he had ever used the restroom there was contradictory at best. No reasonable explanation was offered for the presence of his boot print on the bathroom floor. Nor could Lighten explain the presence of his fingerprints on the bathroom wall seven feet off the ground or on a drink bottle in the attic. Accordingly, the evidence was more than sufficient to sustain his conviction of burglary.[4]

Lighten contends that his conviction cannot be upheld because the fingerprint evidence was the sole evidence of his guilt, and the state failed "to prove to the exclusion of every reasonable hypothesis that the fingerprints could only have been impressed at the time the crime was committed."[5] Lighten's argument fails, however, because the boot print evidence also connected him to the crime.

2. Lighten next argues that the trial court erred in admitting the audiotaped statement of his uncle, Mervin Lane. There are three prerequisites for admission of hearsay based on necessity: (1) the death or unavailability of the declarant, (2) particularized guarantees of trustworthiness, and (3) the evidence must be relevant to a material fact and more probative on that material fact than other evidence

---

[2] OCGA § 24-4-6.

[3] (Citation omitted.) *Rivers v. State*, 271 Ga. 115, 116 (1) (516 SE2d 525) (1999).

[4] See *Massey v. State*, 247 Ga. App. 827 (545 SE2d 66) (2001).

[5] (Citations and punctuation omitted.) *White v. State*, 253 Ga. 106, 107 (1) (317 SE2d 196) (1984).

that may be procured or offered.[6] Lighten challenges the admission of the statement on the ground that it lacked the required guarantees of trustworthiness.

> In determining whether there are sufficient indicia of reliability the trial court must examine the totality of the circumstances surrounding the making of the statements sought to be introduced. The test is whether the declarant's truthfulness is so clear from the surrounding circumstances that . . . cross-examination would be of marginal utility.[7]

Among the factors that the trial court must consider are whether the declarant had a motive to lie and the spontaneity of the statement.[8] The trial court's determination of the trustworthiness of the proffered hearsay is evaluated under an abuse of discretion standard.[9]

In this case, consideration of both factors leads to the conclusion that the statement lacked sufficient indicia of reliability. The crime was committed on March 29, 1999, in Jefferson County. Lane did not make the statement until August 6, 1999, when he was incarcerated in the county jail. Lane had asked one of the jailers to contact Robert Chalker, a sheriff's investigator, to discuss the armed robbery at Ingles. In his statement, Lane, who is Lighten's uncle, alleges that he learned about the robbery after the tenth of April or May, when Lighten told him that the GBI was looking for him. According to Lane, Lighten said he had left a soda bottle in the ceiling in the bathroom; that the bottle might have his fingerprints on it; that he had waited in the ceiling for about three hours until the store closed; that when he came down, he walked to where the money was being counted; that there were two women in the store; and that he opened the back door for the second robber, Lane's nephew Antwan Lane. Lane also said that he did not discover that the women had been locked in the freezer until he read it in the newspaper. In addition, Lane relayed a conversation that took place on May 13, the date the search warrant was executed, in which Lighten said he needed to get rid of the shoes that he had worn during the robbery. Finally, Lane said that prior to his conversations with Lighten, Antwan Lane saw sketches of himself and Lighten in the newspaper and commented that "it didn't look like us."

---

[6] *Holmes v. State*, 271 Ga. 138, 139 (2) (516 SE2d 61) (1999).

[7] (Punctuation and footnotes omitted.) *Chapel v. State*, 270 Ga. 151, 155 (4) (510 SE2d 802) (1998).

[8] *Yancey v. State*, 275 Ga. 550, 555 (2) (c) (570 SE2d 269) (2002).

[9] *Gissendaner v. State*, 272 Ga. 704, 710-711 (6) (532 SE2d 677) (2000).

Based on evidence adduced during the hearing on the statement's admissibility, we cannot conclude that Lane's truthfulness was so apparent from the surrounding circumstances that cross-examination would be only marginally useful. When questioned concerning Lane's motive, Agent Morgan testified that he was certain that Lane "wanted us to help him. I told him I couldn't promise him anything, that we'd speak to whoever. . . . I related . . . to Investigator Chalker to speak to whomever, but apparently he was still in jail the last I heard before being transported back to Atlanta." Lane waited nearly three months until after his first conversation with Lighten to make the statement. Therefore, the spontaneity factor weighs against the admission of the statement.[10] It also appears that Lane made the statement at a time when he hoped to benefit the most. Indeed, the trial court concluded that Lane was "expecting to get something in return" for making the statement. Thus, even though Lane was not a suspect in this crime, it cannot be said that he had no motive to lie to better his position with the authorities. Under these circumstances, we conclude that the trial court abused its discretion in admitting the statement.

We note that the trial court found sufficient indicia of reliability because the statement was corroborated by other evidence. For example, Agent Morgan testified that the information concerning the bottles in the ceiling had not been released to the newspaper. However, the Supreme Court has held that corroboration is not an appropriate factor in determining admissibility. "Although our appellate courts have sometimes relied on evidence that corroborates the out-of-court statement as an indicia of reliability, the existence of corroborating evidence is more properly considered in deciding whether any error in admitting the statement was harmless."[11] In this case, we conclude that the admission of the statement was harmless error because it was merely cumulative of other overwhelming circumstantial evidence: the fingerprints and the boot print. Therefore, any error in admitting the statement does not warrant reversal.

3. Lighten enumerates as error the denial of his motion to suppress evidence seized from his home. He first asserts that the magistrate lacked probable cause to issue the search warrant that led to the discovery of his boots. However, "[t]he burden is on him who asserts error to show it affirmatively by the record."[12] Because the

---

[10] Cf. *Cook v. State*, 273 Ga. 574, 576 (3) (543 SE2d 701) (2001) (statement made to police within several hours of the event); *Holmes*, supra at 140 (2) (statements made a few hours after the crime before either declarant had opportunity to consult with any other witness).

[11] (Footnotes omitted.) *Yancey*, supra at 555.

[12] (Citation and punctuation omitted.) *Griffin v. State*, 265 Ga. 552, 555 (10) (458 SE2d 813) (1995).

record does not contain the search warrant or the affidavit submitted in support thereof, this issue cannot be considered on appeal.

Lighten next contends that the search exceeded the scope authorized by the warrant. Agent Morgan, who executed the search, testified that he listed in his application for the warrant various items, including a handgun and black boots imprinted with "America" or "American" on the sole. The magistrate determined that probable cause existed to search for the gun only and instructed Agent Morgan to prepare a second warrant if the other items were discovered during the search.

The search proceeded, and the boots were found on the laundry room floor. One boot was turned upside down, revealing the word "America" on the sole. Agent Morgan prepared another warrant and returned to the magistrate's office. A different magistrate was on duty, and she informed Agent Morgan that an additional warrant was not required. He returned to the premises and seized the boots. The trial court concluded that the search did not exceed the scope of the warrant.

The trial court did not err in denying the motion to suppress. "An officer conducting a lawful search is not precluded from seizing tangible evidence of the commission of a crime even though that evidence is not specifically listed in the search warrant."[13]

> The evidence shows that the officers were in defendant's house pursuant to a lawfully issued search warrant and that, while conducting a lawful search, seized certain items not listed in the warrant which were in plain view. If an article is already in plain view, neither its observation nor its seizure involves any invasion of privacy.[14]

The boots were in plain view of the officers and constituted tangible evidence of the commission of the crime. Their seizure was permissible.

4. Finally, Lighten assigns error to the denial of his motion for mistrial, made after Agent Morgan testified that he contacted the Clayton County Sheriff's Office "where [Lighten] had been arrested before" in an effort to locate Lighten. Lighten renewed his motion for mistrial after the court gave curative instructions. "The decision whether to grant a mistrial or give a curative instruction ordinarily rests in the trial judge's sound discretion. That discretion will not be interfered with on appeal unless it is apparent that a mistrial is

---

[13] (Citation omitted.) *Banks v. State*, 262 Ga. 190, 192 (4) (415 SE2d 634) (1992).

[14] (Citation and punctuation omitted.) *Holden v. State*, 202 Ga. App. 558, 561 (2) (a) (414 SE2d 910) (1992).

essential to the preservation of the right to a fair trial."[15] No abuse of discretion occurred in the instant case. A brief reference to a defendant's arrest record does not warrant a mistrial where, as here, the trial court instructs the jury to disregard the testimony.[16] "Reference to an arrest, made in the presence of the jury without other detail, is harmless error where proper instructions are given to disregard the reference to the past arrest."[17]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 23, 2003.

*Peter D. Johnson*, for appellant.

*Steven Askew, District Attorney, Samuel H. Altman, John A. Fitzner III, Assistant District Attorneys*, for appellee.

---

[15] (Punctuation and footnotes omitted.) *Smith v. State*, 244 Ga. App. 165, 168 (3) (534 SE2d 903) (2000).

[16] *Dunn v. State*, 251 Ga. 731, 734 (4) (309 SE2d 370) (1983).

[17] (Citations and punctuation omitted.) Id.