A05A0896. HELLER v. THE STATE.
(621 SE2d 591)

ADAMS, Judge.

Undray Heller appeals following his conviction of possession of cocaine and misdemeanor possession of marijuana. He enumerates several errors including the failure to grant his motion for a directed verdict of acquittal.

1. On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. *Brown v. State*, 265 Ga. App. 613 (594 SE2d 770) (2004). To sustain a conviction, the evidence must be sufficient to enable a rational trier of fact to find the appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Construed in a light most favorable to the verdict, the evidence shows that on January 8, 2003, Special Agent Michael Evans of the

Altamaha Drug Task Force, accompanied by officers of the Hazlehurst Police Department of Jeff Davis County, served a search warrant at the residence of Undray and Vernessa Heller. When the officers arrived, Mr. Heller was in the yard and he was placed in custody. Inside, officers found Mrs. Heller sitting at a computer in the kitchen area, and they asked her to wait outside while they searched the property. During the search, Agent Evans discovered a "green and leafy" substance later identified as marijuana in the master bedroom, the kitchen, the living room, and in a shed behind the house. Evans also discovered a "white solid material" later identified as cocaine beside the computer in the kitchen and atop a brick column in the carport. He also found a substance later identified as cocaine in a car described in the search warrant that was parked on the street outside the Hellers' fence. No drugs were found on either Mr. or Mrs. Heller.

Following a trial, the jury found Mr. Heller guilty and Mrs. Heller not guilty. We hold that the evidence was sufficient to support the verdict. "Possession can be proven by circumstantial as well as direct evidence." *Norton v. State*, 195 Ga. App. 737, 738 (395 SE2d 34) (1990). And the fact that the home was occupied and controlled by Mr. and Mrs. Heller allows the inference that the drugs belonged to them:

> A connection can be made between a defendant and contraband found in his presence by evidence which shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. Such occupation and control may be inferred when the accused is the owner or tenant of the premises upon which the illicit drugs are discovered. . . . (Citations omitted.) *Morris v. State*, 161 Ga. App. 141, 143-144 (5) (288 SE2d 102) (1982).

*Carthern v. State*, 238 Ga. App. 670, 672 (519 SE2d 490) (1999), aff'd, 272 Ga. 378 (529 SE2d 617) (2000).

Mr. Heller contends that because his wife had equal access to the drugs the evidence against him was insufficient. But, "the equal access 'rule, conceptually and historically, has no application where, as here, all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of that contraband.' " *Davis v. State*, 270 Ga. App. 777, 779 (607 SE2d 924) (2004). The evidence was sufficient to support the finding that the marijuana and cocaine found in the house and carport belonged to Mr. Heller.

2. Heller contends that the trial court should have granted his motion to suppress the evidence recovered from the car because the car was not parked on the premises to be searched. The parties agree

that the warrant listed the car as an item to be searched, but the warrant itself is not in the record. We only find the affidavit submitted in support of the warrant, which includes a very detailed description of the car including its vehicle identification number. It is Heller's burden to show any error associated with the search of the car. See *Lighten v. State*, 259 Ga. App. 280, 284-285 (3) (576 SE2d 658) (2003). And an adequate description of a car in a search warrant is "sufficient to describe the 'place' to be searched, wherever it might be found, regardless of the fact that it did not specify the location of the automobile. . . ." *Reed v. State*, 126 Ga. App. 323 (1) (190 SE2d 587) (1972). Because Heller has not shown that the description of the car in the warrant was inadequate, he has shown no error.

3. Heller also argues that the search warrant was not based on probable cause. Specifically, he contends the warrant affidavit was flawed because information regarding two controlled drug buys was stale and the warrant only contained one statement about the reliability of a confidential informant.

First, although a magistrate must consider time as an element of probable cause when issuing a warrant, "the mere passage of time does not equate with staleness. Rather, the inquiry is as to whether the factual statements within the affidavit are sufficient to create a reasonable belief that the conditions described in the affidavit might yet prevail at the time of issuance of the search warrant." (Citations and punctuation omitted.) *Copeland v. State*, 273 Ga. App. 850, 853 (616 SE2d 189) (2005). Here, the warrant described in detail two controlled cocaine purchases from Heller on December 4 and 11, 2002, approximately one month before the search warrant was executed. But it also described a third controlled buy that occurred within 48 hours of the application for the warrant. Given the totality of the circumstances, including the ongoing drug activity, there was sufficient evidence to create a reasonable belief that drugs were on the premises. See id.

Second, "even if the informant had no known credibility, the controlled buy conducted under the observation of the officer, alone, would have been sufficient to establish probable cause. [Cits.]" *Turner v. State*, 247 Ga. App. 775, 779 (544 SE2d 765) (2001). We find no error.

4. Heller contends the trial court erred by rejecting his claims under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), that the State exercised its peremptory strikes in a racially discriminatory manner during jury selection. The three-step procedure for analyzing a *Batson* challenge is well known:

The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent.

(Citation omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). We affirm the decision of the trial court unless it was clearly erroneous. *Johnson v. State*, 266 Ga. 775, 777 (4) (470 SE2d 637) (1996).

The State used all six strikes to remove African-American jurors, and Heller is African-American. The trial court found a prima facie case, and the State offered race-neutral reasons for the strikes. The court then determined that Heller had not shown that the State was motivated by discriminatory intent. On appeal, Heller focuses exclusively on Juror No. 28, arguing that discriminatory intent was shown because the State did not strike four similarly situated white jurors.

The State explained that it struck the juror in question because she admitted knowing and socializing with Mrs. Heller. During voir dire, the State asked the juror if she and Mrs. Heller were friends, and the juror replied, "[O]ccasionally we've gone out socially together," which, she explained, amounted to about four times in the past eighteen months. The juror also testified that she knew Mrs. Heller's family but not well. Although she did not know Mrs. Heller's first name, she knew her by her nickname, Flossy.

A white, male juror testified that he knew Mrs. Heller from his mail route. A white female juror testified that she knew Mrs. Heller from working together in the past. A second white female testified that she was not friends with Mrs. Heller and did not socialize with her, but that she knew Mrs. Heller through a prior job. Finally, a third white female testified that she knew Mrs. Heller from school.

The trial court's decision regarding Juror No. 28 was not clearly erroneous. That juror's testimony showed more of a friendship relationship than any of the other four identified jurors for whom there was no testimony that they were friends or socialized together. The trial court's decision was not clearly erroneous.

5. Finally, Heller contends the State failed to establish a chain of custody for the drugs. "When the State seeks to introduce into evidence an item that is subject to the chain of custody rule, it must establish with reasonable assurance that the item seized is the same as the item being offered into evidence." *Armstrong v. State*, 274 Ga. 771, 772 (560 SE2d 643) (2002).

Agent Evans directed Agent Campbell of the Georgia Bureau of Investigation (GBI) to the substances uncovered during his search.

Campbell testified that each time he recovered a piece of evidence he sealed it in an evidence bag, dated and labeled the bag, and then he and Evans signed the bag. Campbell personally transported these bags, labeled State's Exhibits 2, 3, 4 and 5, and secured them in the evidence locker at the "task force."

Sometime thereafter, Exhibits 2, 3 and 4 were sent to the Georgia Crime Lab. On January 14, 2003, Ross Butler, a forensic drug chemist for the GBI, received Exhibits 2, 3 and 4 in sealed evidence bags and, in keeping with the rules of the crime lab, tested only Exhibit 4, which tested positive for cocaine. Butler returned the exhibits to Assistant District Attorney Jan Kennedy in open court on or about April 21, 2003. On April 25, 2003, Campbell retrieved these exhibits from the court clerk at Jeff Davis County Courthouse and delivered them to the crime lab with instructions to test Exhibits 2 and 3; both tested positive for cocaine. Exhibit 5, which was recovered from the kitchen area, was received by the crime lab on April 29. There is nothing in the record to indicate that it had been removed from the task force's evidence locker prior to April 29, and Butler does not appear to have received Exhibit 5 at the crime lab at any time before that date. Butler tested that exhibit and found it positive for marijuana. Both Campbell and Butler testified at trial that none of the evidence appeared to have been tampered with at any time since they confiscated it. Butler also testified that Exhibits 2, 3 and 4 were in essentially the same condition at trial as when he received them for testing. And Campbell recognized the Exhibit 5 bag with his signature at trial.

Absent affirmative evidence of tampering, "mere speculative doubt as to the handling of evidence while in the possession of the Georgia Crime Lab is a matter for consideration by the jury. [Cit.]" *Johnson v. State*, 271 Ga. 375, 382 (519 SE2d 221) (1999). We find no error; the evidence gives reasonable assurance that the items seized are the same as those offered into evidence.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 28, 2005.

*E. Jerrell Ramsey*, for appellant.
*Stephen D. Kelley, District Attorney, Jan Kennedy, Leslie K. DeVooght, Assistant District Attorneys*, for appellee.