A06A1988. McKENZIE v. THE STATE.
(642 SE2d 187)

PHIPPS, Judge.

Travis McKenzie was convicted after a jury trial of trafficking in cocaine. He contends the evidence was insufficient. Because the evidence was sufficient, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a

---

[6] See id.

[10] See *Howard*, supra.

[11] See *Montgomery v. State*, 155 Ga. App. 423, 424 (1) (270 SE2d 825) (1980).

rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the evidence showed that on February 6, 2002, officers Sidney Jordan and Maurice Dudley of the Middle Georgia Fugitive Squad were patrolling a residential street looking for a certain individual upon whom to execute an arrest warrant. The officers had received a tip that the individual was on that street and had a relative in the neighborhood living in a house at which a dark color Honda would be parked in the driveway. The officers spotted a dark color Honda backing out of a residential driveway. Believing that the fugitive was in that car, the officers blocked the driveway with their unmarked patrol car, exited the car, and asked the three men inside the Honda to step out of it. The men complied.

McKenzie and his brother had been seated in the front and back passenger seats of the Honda, which belonged to their mother; their cousin had been the driver. The officers were in uniform, and when McKenzie's cousin realized that they had been stopped by law enforcement, he fled on foot. Jordan tried unsuccessfully to catch him, while Dudley stayed with the other two, ascertaining their names and attempting to obtain from them the name of the person who had run away.

Within minutes, Jordan returned and saw lying in plain view on the driver's seat of the Honda, close to the center console, a clear bag containing a powdery, white substance that appeared to be cocaine. The officers immediately arrested McKenzie's brother. McKenzie was inside the residence, having obtained Dudley's permission to go to the bathroom. The officers went inside and commanded McKenzie by his name to present himself. He did not. During a search of the house, the officers found McKenzie hiding behind hanging garments in a rear bedroom closet and arrested him. At the time, McKenzie had $1,780 in his pockets.

The suspected contraband was seized from the car and later determined to weigh 106.62 grams and consist of 49.3 percent cocaine.

A law enforcement officer, qualified as an expert in the area of narcotics sales, testified that the seized contraband contained white powder, as well as "larger rocks where it shows as being compressed where it come off the big block of cocaine." He stated that the amount of cocaine found in this case was usually discovered only when law enforcement is "looking at a larger target." He testified that the

---

[1] *Ruiz v. State*, 277 Ga. App. 178 (626 SE2d 136) (2006) (footnote omitted); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

purity of the contraband found in this case was unusual for the area, explaining that "by the time it gets down to a street level the purity is further down." He testified that, typically, an amount of 3.5 ounces of powdered cocaine, which is less than the amount seized from the Honda, would be "cut up and broken up, then" sold on the street through a network of "runners." According to the narcotics expert, had the seized contraband been sold by the gram in powder form, it would have had a street value of approximately $10,000; had the powder form been "cut" with some type of supplement and then compressed into rocks of crack cocaine, however, the contraband would have had a street value of approximately $20,000.

McKenzie denied at trial having had any knowledge of the cocaine discovered in the car. He testified that when he heard the officers calling for him inside the house, he hid in the closet because he was concerned that he had violated a term of his probation by spending time with his cousin, who was out on bond for a murder charge. McKenzie explained that his own probation was not related to drugs; it concerned an aggravated assault. McKenzie also explained the source of the $1,780 he had that day. He said that $1,400 was his mother's tax refund and the remainder was his earnings from detailing cars. McKenzie's attorney elicited testimony from McKenzie's mother that McKenzie had her $1,400 tax refund on the day in question.

McKenzie's brother also denied at trial having had any knowledge of the cocaine discovered in the car. As similar transaction evidence, the state showed that McKenzie's brother had a prior conviction for possessing cocaine with the intent to distribute.

McKenzie's cousin agreed to testify as a state's witness. He, too, denied having had any knowledge of the cocaine discovered in the car. He testified that he had run from the police that day "because I had a probation warrant on me." With respect to the charge underlying the instant case, he stated that when McKenzie's brother was in jail, "He told me that Travis didn't have nothing to do with drugs and he asked me would I take the charge for him." Because the brother offered up to $20,000, advised him that he would be given only a probated sentence, and then sent him a $3,000 payment, he signed a statement that the cocaine had been his and that McKenzie and his brother had not known anything about it. But after being arrested in connection with the cocaine and being told by his lawyer that he was facing years of imprisonment, McKenzie's cousin recanted his statement and told the district attorney's office about having been paid to claim the cocaine. Angered, McKenzie's brother insisted that he again claim the cocaine found in the car that day. McKenzie's cousin felt coerced and thus followed McKenzie's brother's instruction to write his (McKenzie's brother's) lawyer a letter claiming the cocaine

and stating further that neither McKenzie nor his brother had anything to do with it. However, as before, McKenzie's cousin recanted his statement, explaining at trial, "I ain't fixing to go to jail for nobody else's stuff. I ain't going to do no time for them."

OCGA § 16-13-31 (a) (1) pertinently provides that any person "who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine."

Challenging the sufficiency of the evidence, McKenzie argues that the evidence showed merely his presence in a car wherein cocaine was discovered. In addition, he argues that the wholly circumstantial evidence that he was in knowing possession of the contraband did not sufficiently eliminate every reasonable hypothesis other than his guilt.

McKenzie was tried with his brother for cocaine trafficking,[2] and the jury was charged on parties to a crime. Every person "concerned in the commission of a crime" is a party thereto and may be charged with and convicted of the crime.[3] A person is "concerned in the commission of a crime" if he directly commits the crime; intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; intentionally aids or abets in the commission of the crime; or intentionally advises, encourages, hires, counsels, or procures another to commit the crime.[4] "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred."[5] Further, possession can be proven by circumstantial or direct evidence.[6]

The evidence here showed that after McKenzie, his brother, and his cousin exited the Honda, 106.62 grams of a mixture with a purity of 49 percent of cocaine was found lying in plain view on the driver's seat, close to the center console. Expert testimony showed that, typically, such purity is reduced; such quantity is cut into smaller amounts; and then the drug is sold on the street for approximately $10,000 to $20,000 through a network of "runners." At the time in

---

[2] McKenzie's brother, Clarence Bogan IV, was also convicted of cocaine trafficking. See *Bogan v. State*, 270 Ga. App. 162 (605 SE2d 872) (2004) (affirming Bogan's conviction).

[3] OCGA § 16-2-20 (a).

[4] OCGA § 16-2-20 (b).

[5] *White v. State*, 278 Ga. 499, 500 (1) (604 SE2d 159) (2004) (citation and punctuation omitted).

[6] *Heller v. State*, 275 Ga. App. 637, 638 (1) (621 SE2d 591) (2005).

question, McKenzie had $1,780 in his pockets and was accompanied by his brother, who had a history of possessing cocaine with the intent to distribute. Once the men realized that they had been stopped by police, McKenzie's cousin fled the scene; soon thereafter, McKenzie concealed himself in a closet, disobeying police commands to present himself. In light of these circumstances, there is no merit in McKenzie's argument that the only evidence linking him to the contraband found in the Honda was his presence at the scene of the crime.[7] Moreover, the jury was instructed on circumstantial evidence, mere presence at the scene of a crime, and mere association with another committing a crime.

There is also no merit in McKenzie's argument that the state's wholly circumstantial evidence that he was in knowing possession of the cocaine failed as a matter of law to exclude every reasonable hypothesis save that of his guilt. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[8] As reasonable, alternative explanations for the circumstantial facts, McKenzie cites his testimony that he did not know the cocaine was in the Honda; his testimony regarding why he hid from the police; his and his mother's testimony regarding how he had obtained $1,400; and his testimony concerning the remainder of the cash he had that day.

> It is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses. Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.[9]

---

[7] See *Renner v. State*, 260 Ga. 515, 517 (3) (b) (397 SE2d 683) (1990) (evidence of defendant's flight can serve as circumstantial evidence of guilt); *Crowder v. State*, 271 Ga. App. 177, 180-181 (2) (609 SE2d 134) (2004) (defendant's flight upon spotting police, despite officer's order to stop; discovery of cocaine on top of wet paper towels in waste basket of bathroom, into which defendant fled and then exited only seconds later; and large amount of cash found on defendant were among circumstances permitting jury to find that defendant was in constructive possession of contraband); *Owens v. State*, 192 Ga. App. 335, 338-340 (1) (a) (384 SE2d 920) (1989) (determining that evidence showed actual possession and noting that the difference between actual and constructive possession is one of degree); see generally *State v. Johnson*, 280 Ga. 511, 514, n. 4 (630 SE2d 377) (2006) (possession of $997 in cash was additional evidence of defendant's possession of cocaine with intent to distribute).

[8] OCGA § 24-4-6.

[9] *Smith v. State*, 280 Ga. 161, 162 (1) (625 SE2d 766) (2006) (citation and punctuation omitted).

The evidence McKenzie cites "did not eliminate the State's evidence, it simply created a question of fact for the jury's resolution; the jury was free to reject [McKenzie's] evidence."[10] "Because the jury has heard the witnesses and observed them testify, it is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court."[11] Where, as here, the totality of the evidence was sufficient to connect the defendant to possession of drugs, even though there was some evidence to authorize a contrary finding, the jury's verdict will be sustained.[12] Viewed in a light to favor the jury's verdict, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that McKenzie was guilty beyond a reasonable doubt of trafficking in cocaine.[13]

*Judgment affirmed. Smith, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 12, 2007.

*Grantham & Peterson, William M. Peterson,* for appellant.
*Kelly R. Burke, District Attorney, Timothy M. Marlow, Assistant District Attorney,* for appellee.

---

[10] *Johnson,* supra; see *Smith,* supra.
[11] *Singleton v. State,* 194 Ga. App. 5, 6 (389 SE2d 496) (1989).
[12] Id. at 6-7.
[13] *Jackson,* supra; see *Crowder,* supra; *Wilson v. State,* 256 Ga. App. 741, 742-743 (1) (569 SE2d 640) (2002); *Mitchell v. State,* 222 Ga. App. 453, 455 (2) (474 SE2d 306) (1996); *Owens,* supra.