## A08A2326. JACKSON v. THE STATE.

(671 SE2d 902)

BLACKBURN, Presiding Judge.

Following a jury trial, Mark Jackson appeals his conviction of trafficking in cocaine,[1] possession of cocaine with intent to distribute,[2] possession of marijuana,[3] and obstruction[4] (five counts). Specifically, Jackson (1) challenges the sufficiency of the evidence as to the trafficking count, and contends that the trial court erred by (2) failing to give him a full hearing on his motion to suppress, (3) denying his motion to suppress, (4) failing to merge the trafficking count with the distribution count, (5) failing to merge the five obstruction counts, and (6) instructing the jury as to joint possession and parties to a crime. Because the lesser included offense of distribution should have merged with the conviction for trafficking, we vacate the sentences as to the trafficking and distribution counts and remand for resentencing on the trafficking count. We otherwise affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, an appellate court determines evi-

---

[1] OCGA § 16-13-31 (a) (1).
[2] OCGA § 16-13-30 (b).
[3] OCGA § 16-13-30 (j) (1).
[4] OCGA § 16-10-24 (a).

dence sufficiency and does not weigh the evidence or determine witness credibility.

*Eady v. State*.[5] So viewed, the evidence shows that an officer on patrol executed a traffic stop on a vehicle with a broken windshield. The officer then realized that he knew the female driver, whom he had recently cited for DUI and who was a confidential informant for other officers. The driver told the officer that she was going to pick up a man (who turned out to be Jackson) who would be carrying a large amount of crack cocaine. The driver described the man and, despite the officer's reluctance, offered to signal the officer later in the evening if the man was indeed carrying the drugs when she picked him up. After the driver departed, the officer observed the described man on the street where the driver said he would be.

Later in the evening, the officer spotted the driver again as she drove by waving dramatically out her window at the officer. The officer followed her, noticed a broken tag light and executed a second traffic stop on the vehicle, which now contained Jackson in the passenger seat. As the officer spoke to the driver outside of the car, the driver said that Jackson had a large quantity of crack cocaine hidden in his pants. As four other officers arrived at the scene and began speaking to Jackson, the driver told an officer that Jackson had a gun. As the officers attempted to pat Jackson down, he gave consent to search inside his pants, but then immediately struggled and ran to the rear of the car where he was eventually tackled and handcuffed by the officers. A search of Jackson yielded no weapon but a large "cookie" of crack cocaine and one gram of marijuana concealed in his pants.

After a jury found Jackson guilty of trafficking in cocaine, possession of cocaine with intent to distribute, possession of marijuana, and five counts of obstruction, the trial court sentenced him to serve a total of forty years, with the first twenty-five years in confinement. Jackson now appeals.

1. Jackson contends that the evidence was insufficient to support the jury's verdict as to trafficking in cocaine, in that the State never proved the amount of cocaine Jackson possessed. We disagree.

The standard of review for sufficiency of the evidence [in a criminal case] is set out in *Jackson v. Virginia*.[6] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational

---

[5] *Eady v. State*, 256 Ga. App. 696 (569 SE2d 603) (2002).
[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Taylor v. State.*[7]

To prove that Jackson was guilty of trafficking in cocaine, the State had to show that he knowingly possessed "28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine. . . ." OCGA § 16-13-31 (a) (1). At trial, the evidence showed that officers seized a total of 105 grams of cocaine (with a purity of 53 percent), which was in an evidence bag containing a "large cookie" seized from Jackson and two small "rocks" seized from the driver. The testimony at trial showed that the portion seized from Jackson was comparatively a much larger piece, not broken down into smaller portions like the two pieces seized from the driver. An officer testified that the amount found on the driver was small and consistent with personal use and the amount found on Jackson was much larger and consistent with use for distribution or sale. Based on the record before us, including the total weight of 105 grams and the evidence regarding what proportion was found on Jackson, we conclude that the evidence, when viewed in favor of the verdict, authorized a rational trier of fact to find that Jackson possessed 28 grams or more of cocaine.

2. Jackson contends that the trial court erred in failing to give him a full hearing on his motion to suppress. Because the record shows that the trial court held a hearing and that Jackson acceded to ending the hearing, we discern no reversible error.

As noted by Jackson, OCGA § 17-5-30 (b) provides that a trial court that is ruling on a motion to suppress "shall receive evidence out of the presence of the jury on any issue of fact necessary to determine the motion. . . ." At the suppression hearing, the officer who initially stopped the driver testified as to the events leading up to Jackson's arrest. After the officer had testified that he knew the driver's reputation, that the driver's description of Jackson was confirmed before the second traffic stop, that both traffic stops were due to observed violations, that the driver signaled to the officer, and that the driver told the officer that Jackson had cocaine and a gun, the trial court ruled that the officer had probable cause to search Jackson.

At that time in the hearing, Jackson's counsel conceded that if the trial court was ruling that the officers had probable cause to search Jackson, then the motion was in effect denied and the issue had been ruled upon, ending the hearing. After the attorney ac-

[7] *Taylor v. State*, 266 Ga. App. 818 (598 SE2d 122) (2004).

knowledged the trial court's ruling, the trial court allowed the attorney to proffer evidence and argue why his motion to suppress should nevertheless prevail. No other witnesses testified at the hearing.

We conclude that the trial court did not fail to "receive evidence . . . on any issue of fact necessary to determine the motion."[8] OCGA § 17-5-30 (b). The court had received the evidence it believed warranted a finding of probable cause to search Jackson, and no other evidence was in fact necessary to resolve the motion on that basis. Jackson's attorney conceded the mootness of his remaining arguments if the trial court's ruling was correct, and he was given the opportunity to proffer his remaining argument and evidence for the record. Under these circumstances, we discern no reversible error.

3. Jackson contends that the trial court erred in denying his motion to suppress, arguing that the officers lacked probable cause to search him. In light of the totality of the circumstances, we disagree.

> In reviewing a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision. In so doing, we may consider all relevant evidence of record, wherever located, including evidence introduced at a suppression hearing and that introduced at trial; we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.

(Punctuation omitted.) *Hulsinger v. State.*[9]

Here, the trial court concluded that the officers were justified in searching Jackson based on probable cause to believe that Jackson possessed contraband. This conclusion was based on the following facts: (i) the first officer acted on information from a person known by the officer to have familiarity with narcotics, (ii) the driver had worked with police before as a confidential informant, (iii) after the

---

[8] Jackson's attorney also stated that he would "make it a lot easier for this hearing" and not contest the facts leading up to the traffic stop and initial pat-down search. As this was the same evidence on which the trial court based its ruling that the officers had probable cause, we find no improper limitation on Jackson's right to cross-examine the officer at the hearing. See *Lampley v. State*, 284 Ga. 37, 40 (4) (663 SE2d 184) (2008) ("[a] party cannot complain about errors he helped induce") (punctuation omitted).

[9] *Hulsinger v. State*, 221 Ga. App. 274, 275 (470 SE2d 809) (1996).

driver told the officer that a man meeting Jackson's description would be found walking on a particular street, the officer corroborated this by going to the street and spotting Jackson, (iv) the driver told police she would signal police if her passenger (Jackson) was carrying contraband, (v) the driver signaled the officer as she drove by, and (vi) when police executed the subsequent traffic stop on the driver and Jackson, the driver told police that Jackson carried a gun and had cocaine concealed in his pants.

Lesser circumstances have justified a finding of probable cause in *Nixon v. State*.[10] There, an unknown man approached an officer and described four men riding in a car and selling drugs. The officer soon spotted a car containing men meeting the description and recognized one of the men as a parolee about whom he had received "unconfirmed information" of drug dealing. Based on the totality of the circumstances in that case, the Supreme Court of Georgia held that the officer had probable cause to believe the defendant was engaged in a drug-related offense. In so holding, the Supreme Court of Georgia stated that

> [w]hile an effort to fix some general, numerically precise degree of certainty corresponding to probable cause may not be helpful, it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. Probable cause deals with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The test of probable cause is whether it would justify a person of reasonable caution in believing that an offense has been or is being committed, and this requires probability, which is less than a certainty but more than mere suspicion or possibility.

(Citations and punctuation omitted.) Id.

Here, a woman known to police had correctly described Jackson and where he would be found (confirmed by an officer), had flagged down an officer, and had stated to a police officer that Jackson possessed cocaine. In light of these circumstances, we discern no reversible error in the trial court's conclusion that the officers had probable cause to believe Jackson was engaged in a drug-related offense.

4. Jackson contends that the trial court erred by refusing to

---

[10] *Nixon v. State*, 256 Ga. 261, 262-263 (2) (347 SE2d 592) (1986).

432

merge the charges of trafficking in cocaine and possession with intent to distribute cocaine. We agree.

Multiple convictions arising from the same conduct are prohibited if one crime is "included in the other." OCGA § 16-1-7 (a) (1). Here, the two offenses arose from the same conduct, and as we have previously held, a distribution offense under OCGA § 16-13-30 (b) is included in a trafficking offense under OCGA § 16-13-31. See *Rupnik v. State*;[11] *Nunery v. State*.[12] Accordingly, the two offenses should have merged.

Those holdings are consistent with *Drinkard v. Walker*,[13] which clarified the proper approach for applying the rule prohibiting multiple convictions arising from the same conduct where one offense is "included" in the other. To determine whether one offense is included, *Drinkard* adopted the "required evidence" test: "a single act may constitute an offense which violates more than one statute, and *if each statute requires proof of an additional fact which the other does not*, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." (Punctuation omitted; emphasis supplied.) *Waits v. State*.[14]

Here, to prove possession of cocaine with intent to distribute under OCGA § 16-13-30 (b), the State had to show that Jackson "possess[ed] with intent to distribute any controlled substance" of any purity and of any amount. To prove trafficking in cocaine under OCGA § 16-13-31 (a) (1), the State had to show that Jackson was "knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine. . . ."

This Court has already held that "[t]he 'intent to distribute' which is necessary to the crime of possession of a substance under § 16-13-30 (b) is satisfied by the reasonable inference that a person who possesses more than the 28 grams of cocaine under § 16-13-31 intends to distribute it." *Gilbert v. State*.[15] See *Pitts v. State*.[16] Therefore, the distribution offense contains no unique elements not satisfied by a trafficking offense, and the distribution offense was included in the trafficking offense. See *Nunery v. State*, supra, 229 Ga. App. at 247 (1); *Hancock v. State*;[17] *Iglesias v. State*.[18] Accordingly,

---

[11] *Rupnik v. State*, 273 Ga. App. 34 (614 SE2d 153) (2005).

[12] *Nunery v. State*, 229 Ga. App. 246 (493 SE2d 610) (1997).

[13] *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006).

[14] *Waits v. State*, 282 Ga. 1, 4 (2) (644 SE2d 127) (2007).

[15] *Gilbert v. State*, 208 Ga. App. 258, 261 (1) (430 SE2d 391) (1993).

[16] *Pitts v. State*, 260 Ga. App. 553, 563 (8) (a) (580 SE2d 618) (2003).

[17] *Hancock v. State*, 210 Ga. App. 528, 531-534 (3) (437 SE2d 610) (1993) (physical precedent only).

[18] *Iglesias v. State*, 191 Ga. App. 403 (381 SE2d 604) (1989).

[t]he judgment of conviction entered on the guilty verdict[ ] for violation of OCGA § 16-13-30 (b) must be reversed and the sentence[ ] imposed as to [that] count[ ] vacated. Since . . . the sentence[ ] imposed on the conviction[ ] for violation of OCGA § 16-13-31 [(a) (1) was] dependent on (concurrent to) a vacated sentence imposed on . . . the reversed conviction[ ], the sentence[ ] for violation of OCGA § 16-13-31 [(a) (1) is] likewise vacated and the case remanded for resentencing as to [that] conviction[ ].

*Nunery v. State*, supra, 229 Ga. App. at 247 (1). See *Duffey v. State*.[19]

5. Jackson contends that the trial court erred in failing to merge the five obstruction counts. As the evidence showed that Jackson obstructed each of the five different officers in distinct ways, we disagree.

Jackson was convicted of misdemeanor obstruction as defined in relevant part by OCGA § 16-10-24 (a): "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." He contends that he could not be convicted of five counts of obstruction for resisting one arrest executed by five officers. However, the evidence showed that he separately hindered each of the five officers during his arrest: jerking away and fleeing from the first officer who attempted to pat him down; breaking a handhold by a second officer attempting to restrain him; breaking from, evading, and running from a third officer who performed the lawful search; running into and struggling with a fourth officer who then attempted to subdue Jackson; and jerking away from and wrestling with a fifth officer on the ground attempting to handcuff him after he was tackled. Each officer explicitly testified that Jackson's specific efforts to fight against or flee from him hindered that officer's own efforts to lawfully search, subdue, or arrest Jackson.

As this evidence showed that each charge of obstruction "was separate and distinct with independently supporting facts," there was no merger. *Culver v. State*.[20] See *Denny v. State*;[21] *Waits v. State*, supra, 282 Ga. at 4 (2) ("[t]he rule prohibiting more than one conviction [for the same or included crimes] does not apply unless *the same conduct* of the accused establishes the commission of multiple crimes") (punctuation omitted; emphasis supplied).

6. At trial, the court, over Jackson's objection, charged the jury

---

[19] *Duffey v. State*, 222 Ga. App. 802, 803 (476 SE2d 89) (1996).
[20] *Culver v. State*, 230 Ga. App. 224, 232 (8) (496 SE2d 292) (1998).
[21] *Denny v. State*, 222 Ga. App. 674, 676 (1) (475 SE2d 698) (1996).

on joint possession and party to a crime. Jackson now appeals the trial court's jury charge on those instructions, arguing that they were not justified by the evidence.

> It is well established that an instruction is not inapplicable where there is any evidence, however slight, on which to predicate it. To justify a charge on a given subject, it is not necessary there should be compelling evidence giving rise to that point; it is enough if there be something from which a legitimate process of reasoning can be drawn from it by the jury.

(Citation and punctuation omitted.) *Garnett v. State*.[22] See *Payton v. State*.[23]

At trial, to explain Jackson's possession of the cocaine found on him by police, Jackson's attorney questioned witnesses about the possibility that the driver of the vehicle in which Jackson rode could have given the drugs to Jackson or could have forced him into actual possession. On the theory that the driver handed Jackson the cocaine in the moment before he was searched (and Jackson therefore did not "knowingly" possess the cocaine), defense counsel also questioned police about possible fingerprint evidence showing who else may have possessed the contraband. In his closing argument, defense counsel argued that the driver used Jackson as a scapegoat for her exclusive possession of the cocaine and simply "left Mr. Jackson holding the bag, holding the bag literally."

However, there was also evidence that the driver picked up Jackson based on an arrangement with her friends who were using drugs and who had called Jackson from the driver's home telephone. The driver testified that Jackson paid her for the ride by giving her two pieces of crack cocaine from his bag, and that upon seeing the police following their car, Jackson warned the driver of their presence.

In sorting out these versions of events, the jury benefitted from the party to a crime instruction. A person's participation in a crime as a party "may be inferred from that person's presence, companionship, and conduct before, during and after the crime," *Marshall v. State*,[24] and these factors could have directly informed the jury's deliberation as they weighed Jackson's culpability in light of the varying evidence. Therefore, the trial court's charge on party to a crime was helpful as a legitimate part of the jury's reasoning process.

---

[22] *Garnett v. State*, 167 Ga. App. 792, 793 (307 SE2d 692) (1983).
[23] *Payton v. State*, 177 Ga. App. 104, 107 (4) (338 SE2d 462) (1985).
[24] *Marshall v. State*, 275 Ga. 740, 742 (4) (571 SE2d 761) (2002).

See *Russell v. State*;[25] *McKenzie v. State*[26] ("[e]very person 'concerned in the commission of a crime' is a party thereto and may be charged with and convicted of the crime'").

For similar reasons, the trial court did not err in charging the jury on joint possession. The jury could have inferred from the evidence that regardless of whether Jackson willingly accepted actual possession of the cocaine from the driver at the time of the search, the driver never exclusively possessed it:

> Possession of contraband may be joint or exclusive, and actual or constructive. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.

(Punctuation and footnote omitted.) *Herberman v. State*.[27] "Since there was some evidence from which an issue of joint possession could arise," the trial court did not err in charging the jury as to joint possession. *Horton v. State*.[28]

*Judgment affirmed in part and reversed in part; sentence vacated in part and case remanded for resentencing. Miller, C. J., and Ellington, J., concur.*

DECIDED JANUARY 5, 2009.

*Donna L. Clement, Anthony S. Carter*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Candace K. Slezak, Assistant District Attorney*, for appellee.

---

[25] *Russell v. State*, 289 Ga. App. 789, 791 (1) (658 SE2d 400) (2008).

[26] *McKenzie v. State*, 283 Ga. App. 555, 558 (642 SE2d 187) (2007).

[27] *Herberman v. State*, 287 Ga. App. 635, 637 (1) (653 SE2d 74) (2007).

[28] *Horton v. State*, 194 Ga. App. 797, 800 (5) (392 SE2d 259) (1990). As Jackson did not challenge his actual possession (only his knowing possession), the State's failure to indict the driver did not preclude a charge on joint possession in this case. Compare *Turner v. State*, 276 Ga. App. 381, 382 (623 SE2d 216) (2005) (reversing a conviction for constructive possession where the passenger was not charged and the sole evidence of the defendant's guilt was ownership and driving of vehicle).