## A10A1243. FLOYD v. THE STATE.

(703 SE2d 62)

SMITH, Presiding Judge.

Walter Eugene Floyd appeals from his convictions of trafficking in methamphetamine, possession of methamphetamine, and possession of methamphetamine with the intent to distribute. Floyd contends the trial court erred by denying his motion to suppress and that insufficient evidence supports his convictions. We disagree and affirm.

Viewed in the light most favorable to the verdict, the record shows that while Officer McCarley was patrolling and observing a trailer park based upon reports of drug activity, he saw a truck driven by Floyd pull into the driveway of the trailer that police had kept under observation for several months. Officer McCarley then saw the trailer's resident stand near the driver's door "and it appeared he was reaching in the window." The officer continued past the trailer and by the time he turned around, Floyd had already pulled out of the driveway.

The officer followed Floyd for about a mile and then activated his blue lights and video equipment. While following Floyd, Officer McCarley noticed that the passenger, Kenneth Moore, repeatedly went into the console and the left side of his jacket. He testified in the motion to suppress hearing that he stopped Floyd to investigate what had happened at the trailer.

After Floyd pulled over, Officer McCarley asked Floyd about his activities at the trailer. Floyd "stated that they were there . . . to check on his vehicle that was having some brake work done to it." Officer McCarley testified that during the two months that he had observed the trailer, he never saw a vehicle being worked on at that location. Floyd then consented to a search of his vehicle and agreed to sit in the back seat of the officer's patrol car during the search.

The officer left the back door open and did not handcuff Floyd. When the officer asked Moore to get out of the truck and stand between his patrol car and the back of the truck, Moore began walking away from the officer and placed his hand in his pocket. The officer noticed that one side of Moore's jacket appeared to have something in it; he drew his taser and asked Moore again to step behind the truck. Moore initially appeared to comply and then stated, "this s**t ain't going to happen like this," and ran. The officer closed the back door of his patrol car, notified dispatch, and started chasing Moore. The video of Floyd in the back of the police car shows him saying, "Mike, Go." Officer McCarley lost sight of Moore briefly when he went around a trailer.

Another officer providing back-up captured Moore as he came out from behind a house next to the trailer. A search of Moore's pockets revealed $1,161 in cash. Moore told the officers that he ran because he "didn't want to go back to jail."

When officers searched Moore's flight route, they discovered multiple bags of methamphetamine underneath a "weathered" game table with a large hole in it. The ground underneath the table was "real wet," but the bags of methamphetamine were completely dry and clean. The methamphetamine weighed 250.19 grams and was worth $25,000. An officer testified that this quantity of methamphetamine was inconsistent with personal use. A search of the truck driven by Floyd revealed digital scales in the center console. An officer testified that the scales were the same kind typically "used to weigh out drugs for distribution."

In the motion to suppress hearing, Officer McCarley testified that before he stopped Floyd, he had "been flagged down and had neighbors that were complaining about the constant traffic in and out day and mostly at night" several times. He also personally received calls about suspected drug activity at the trailer. The person who stood by Floyd's driver door at the trailer was the subject of the complaints about the activities at his trailer. Officer McCarley gave more detail in the motion to suppress hearing about seeing the trailer occupant remove something from Floyd's vehicle during their brief interaction. About a week before the officer's encounter with Floyd, Officer McCarley discovered over $2,000 in cash that "reeked of marijuana" during a pat-down search of the trailer's occupant.

1. Floyd contends the trial court should have granted his motion to suppress because the officer lacked a reasonable articulable suspicion of criminal activity. We disagree. Floyd drove to a trailer under surveillance based upon numerous citizen reports of drug activity, he spent a brief period of time there, and the officer observed an exchange between the trailer's resident and Floyd. This evidence suffices to create a reasonable articulable suspicion of criminal

activity. *Satterfield v. State*, 289 Ga. App. 886, 888-889 (2) (658 SE2d 379) (2008); *Edwards v. State*, 253 Ga. App. 837, 838-839 (a) (560 SE2d 735) (2002).

2. Floyd asserts insufficient evidence supports his convictions because the State failed to prove constructive possession.

Where the State is unable to provide evidence of actual possession, it may sustain a conviction based upon evidence of constructive possession. *Johnson v. State*, 282 Ga. App. 52, 54 (1) (637 SE2d 775) (2006). Constructive possession requires proof that the accused "knowingly had both the power and the intention at a given time to exercise control over the drugs." (Citation and footnote omitted.) Id. In cases involving contraband found in automobiles, the State is generally entitled to an evidentiary presumption that the owner or driver of the automobile is in constructive possession of the contraband. See *Ramirez v. State*, 290 Ga. App. 3, 4 (1) (658 SE2d 790) (2008). And, "joint constructive possession with another will sustain a conviction for possession of contraband." (Citation, punctuation and footnote omitted.) *Waters v. State*, 280 Ga. App. 566, 567-568 (634 SE2d 508) (2006).[1] "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citation, punctuation and footnote omitted.) *McKenzie v. State*, 283 Ga. App. 555, 558 (642 SE2d 187) (2007).

In this case, all of the evidence submitted by the State combined to sufficiently prove Floyd's joint constructive possession of the methamphetamine. See *Martinez v. State*, 303 Ga. App. 71, 73-75 (1) (692 SE2d 737) (2010); *Waters*, supra, 280 Ga. App. at 567-568. Floyd drove to the trailer under surveillance for suspected drug activity; the officer saw Floyd exchange something with the trailer's resident; digital scales commonly used to weigh drugs were found in the center console of the truck driven by Floyd; the officer observed that the passenger repeatedly went into either the center console or his left pocket as the officer followed Floyd after he left the trailer; and Floyd said, "Mike, Go" when he saw Moore flee from the police officer.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 27, 2010.

*William L. Henderson, Jerry Boykin*, for appellant.

---

[1] The record in this case shows that the State charged Floyd and Moore with the same crimes related to the methamphetamine.

Leigh E. Patterson, District Attorney, for appellee.