### A99A0673. JONES v. THE STATE.
(515 SE2d 841)

ELDRIDGE, Judge.

After a bench trial, the trial court found Timothy Jones guilty of possession of cocaine. On appeal, he challenges the denial of his motion to suppress. We affirm the trial court's ruling.

Gwinnett County Police Officer Mike Adams testified at the motion to suppress hearing. Adams testified that he routinely conducts patrols of an area of the county that includes a townhouse complex on Beaver Springs Lane. "I go there every single day[ ], it is one of our target areas." This area is a high crime area and known for drug sales. "I've made several cases out of Beaver Springs Lane. I mean I personally have made drug cases there, standing in that spot."

On and around the incident date of July 2, 1997, Adams had received complaints about drugs being sold by several males standing out in front of an abandoned townhouse on Beaver Springs Lane. "[W]e get calls about Beaver Springs Lane from the residents daily." In addition, Adams had received an anonymous tip that a man named Benny Hill was selling drugs in front of the townhouse. Adams was familiar with Hill from "past experiences."

At just after midnight, Adams patrolled Beaver Springs Lane. Benny Hill was sitting on some railroad ties in front of the abandoned townhouse. Appellant Jones was sitting with him. The officer stopped his marked patrol vehicle to conduct a "field interview" with the men. As the officer approached, appellant Jones appeared to put something into his right shoe. During the field interview, Hill consented to a pat down search, during which drugs and drug paraphernalia were found on his person.

For the officer's safety, he also conducted a weapons pat down of Jones. Officer Adams testified that such weapons search is a matter of standard operating procedure in a situation like the one confronting him on that occasion, i.e., "[a]ny time I make contact with people in the middle of the night, I'm always afraid. And the area, this is the biggest drug area in my district. We've had shootings and stabbings and everything down there. Just the area and the time of day. I felt scared." During the pat down, the officer felt what he immediately knew to be a crack pipe in Jones' pocket. He asked Jones "is this a crack pipe?" Jones replied "yeah, are you going to take me in for that?" The officer arrested Jones for violation of a county ordinance, "Loitering for drug related purposes." During a search incident to arrest, Adams asked appellant Jones to remove his right shoe. A rock of crack cocaine fell from the shoe. *Held*:

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation, and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

1. Jones claims that Adams lacked "articulable suspicion" to conduct a *Terry*[1] stop of Jones. We disagree.

Under *Terry*, an officer may make an investigatory stop where the officer has a reasonable articulable suspicion of criminal activity. *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997). While the field interview with Jones cannot be considered a "*Terry* stop," since no evidence shows that Jones was either stopped, questioned, or detained against his will,[2] we find that a reasonable articulable suspicion of criminal activity existed so as to prompt the field interview with Jones. Officer Adams had been given information that several males were selling drugs in front of the abandoned townhouse on Beaver Springs Lane. Adams had made drug arrests at "that very spot." Jones was one of two males standing in front of the abandoned townhouse at midnight. Drugs were found on Jones' companion, Hill. This evidence provided reasonable, articulable *suspicion* of criminal activity so as to prompt an inquiry of Jones.

2. Next, Jones contends that even if the officer had grounds for conducting a field interview with him, a pat down weapons search was not authorized, because the officer had no basis upon which to reasonably believe that he was in danger from Jones. We strongly disagree.

> [A] law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. A policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. The purpose of this limited search is to allow the officer to pursue his investigation without fear of violence. . . . The question is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety was in danger.

(Citations and punctuation omitted.) *Thompson v. State*, 230 Ga.

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[2] Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [and] ask to examine the individual's identification, . . . as long as the police do not convey a message that compliance with their requests is required.
(Citations and punctuation omitted.) *Florida v. Bostick*, 501 U. S. 429, 434-435 (111 SC 2382, 115 LE2d 389) (1991).

App. 131, 132-133 (495 SE2d 607) (1998). To that end, we have repeatedly held that "[i]t is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed." (Citations and punctuation omitted.) *State v. Jarrells*, 207 Ga. App. 192, 193 (4) (427 SE2d 568) (1993).[3] "Firearms are tools of the drug trade." (Citations and punctuation omitted.) *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321) (1991); *Condon v. State*, 203 Ga. App. 163, 164 (416 SE2d 802) (1992); *McGugan v. State*, 215 Ga. App. 535 (451 SE2d 460) (1994).

Here, Officer Adams had been informed that *several* men were selling drugs in front of the abandoned townhouse on Beaver Springs Lane. Jones was one of two men standing in front of the abandoned townhouse at midnight. Drugs had been found on Jones' companion. It was not unreasonable for the officer to suspect that Jones, too, was selling drugs and may be armed, as are so many in the "drug trade." *Hayes v. State*, supra. In addition, the officer was questioning *two* men who were suspected drug dealers. Adams was well aware that there are frequent "shootings and stabbings and everything" at that precise location. Under the totality of the circumstances presented in this case, we find that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety . . . was in danger." *Terry*, supra at 27. Accordingly, it was reasonable for the officer to perform a minimally intrusive weapons pat down of Jones.

3. Jones contends that "a crack pipe not shown to contain cocaine residue is not contraband and therefore not subject to the plain feel corollary to the plain view doctrine." Jones cites no authority for this proposition, and we reject it. Possession of drug related objects is against the law. OCGA § 16-13-32.2. In this case, the officer testified that he knew immediately that the hollow glass tube in Jones' pocket was a pipe for smoking crack cocaine, and Jones admitted that the tube was a "crack pipe." Possession of a "crack pipe" is possession of a drug related object in contravention of OCGA § 16-13-32.2. Thus, the seizure of the "crack pipe" was proper.

4. Jones contends that the State had the burden of proving the county ordinance, "Loitering for drug related purposes," in order to establish probable cause to arrest Jones, and because the State failed to introduce the ordinance, the fruits of his arrest should have been suppressed.

We agree that the State failed to prove the ordinance.

---

[3] See also *Montoya v. State*, 232 Ga. App. 24, 25 (499 SE2d 680) (1998); *Stewart v. State*, 227 Ga. App. 659, 660-661 (490 SE2d 194) (1997); *Pickens v. State*, 225 Ga. App. 792, 794-795 (484 SE2d 731) (1997); *McGugan v. State*, 215 Ga. App. 535, 536 (451 SE2d 460) (1994); *Wilson v. State*, 210 Ga. App. 886, 887 (437 SE2d 867) (1993).

However, the evidence of record is legally sufficient to establish that, prior to his arrest, appellant had committed the offense of [possession of drug related objects] in the arresting officer's presence in violation of [OCGA § 16-13-32.2]. Such [State law offense] would provide the officer with legitimate grounds lawfully to arrest appellant. OCGA § 17-4-20 (a).

*Williams v. State*, 228 Ga. App. 698, 700 (492 SE2d 708) (1997). Again, we reject Jones' contention that, absent the presence of cocaine residue, "State law does not prohibit possession of a crack pipe, even late at night in a high crime area while sitting next to a known drug dealer." Jones again cites no law for this contention, and we are aware of none. While the presence of residue in a "crack pipe" may go to prove the element of "intent to use" under OCGA § 16-13-32.2, such residue is not, in itself, an essential element of the crime.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED APRIL 6, 1999 —
RECONSIDERATION DENIED APRIL 30, 1999 — 

*Clark & Towne, David E. Clark*, for appellant.
*Daniel J. Porter, District Attorney, John S. Melvin, Assistant District Attorney*, for appellee.