**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 26, 2013**

# In the Court of Appeals of Georgia

A12A2107. STATE v. ANDREWS.

BARNES, Presiding Judge.

The State appeals from the trial court's order granting a motion to suppress evidence seized from a pat down search of Perry Andrews. Andrews was arrested and indicted for possession of cocaine. He filed a motion to suppress alleging that he was illegally detained and searched. Following a hearing, the trial court granted his motion. For the reasons set forth below, we reverse.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a

reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility . . . must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Tate v. State,* 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

So viewed, the evidence demonstrates that at approximately 1:00 a.m. on January 23, 2009, a deputy with the Telfair County Sheriff's office was on patrol when another officer contacted him and told him that "there was a subject . . . walking to a known drug suspect's residence." The officer testified at the motion to suppress hearing, that he "circled the block a couple of times[,] . . . jumped a street" and then made contact with the subject, whom he identified as Andrews after he rolled his window down and "noticed who it was." The officer testified that he knew Andrews and "made small talk like, hey, haven't seen you in a while."

Andrews told the officer that he was out walking, and the officer, who was still sitting in his patrol vehicle, testified that since he "knew where [Andrews] was coming from . . . [he] asked him did he have anything illegal on him." The officer further testified that he did not see Andrews come out of the residence of the

2

suspected drug dealer, but that he could see the front yard of the residence from where he was stopped.

Andrews told the officer that he did not have anything illegal and "started emptying out his pockets." The officer exited his patrol vehicle, and asked Andrews if he had anything else on him, and when Andrews responded that he did not, he asked Andrews if he "had a problem" with being patted down. Andrews responded "no," and when the officer patted him down he "felt a hard chunky substance" in the pocket of Andrews' sweatshirt. Believing the substance to be contraband, the officer "reached in [Andrews'] pocket and seized it." The officer retrieved a small baggie containing an off-white substance which was later determined to be cocaine.

> Andrews testified that after being stopped, the officer asked him if he had
>
> any weapons or anything illegal on him and I said, No. [The officer] stepped out of the vehicle. He asked me, . . . Do you mind if I search you? I said, No and I pulled out what I had in my pockets. I said I don't have anything on me. He said, Well, can you turn around and put your hands on the car and let me pat you down.

Andrews further testified that he "felt that [he] had to allow [the officer] to search" him, but that he had never felt threatened during the encounter and, when asked if he

had felt that he was in the officer's custody and could not leave, he responded, "No." Andrews also testified that he consented to the pat-down.

In granting Andrews' motion to suppress, the trial court found that,

[w]hen the officer got out of his patrol car and *immediately* began patting [Andrews] down and searching his pockets, the encounter with [Andrews] was elevated to a second tier investigation. [Andrews] testified that he felt he was not free to go when the Officer got out of his patrol car and put his hands on [Andrews] to search him. There is simply no particularized or objective basis for the Officer to detain and seize [Andrews] at that time and conduct a search of his clothing. This was not a pat down for weapons for the Officer's safety as the Officer did not testif[y] that he had any suspicion that [Andrews] might pose[] a threat to the Officer. The Court can only conclude that the search was for contraband. Even though [Andrews] voluntarily pulled items from his pocket, the Officer's own search of [Andrews] would have exceeded the parameters of any consent of [Andrews] to show the Officer what was in his pocket. . . . As the Officer did not have any particularized or reasonable suspicion to justify searching [Andrews], the search was unlawful. . . .

(Emphasis supplied.)

The trial court further found that the officer "did not ask permission to search [Andrews] nor did [Andrews] testify that he consented to the search of his clothing and pockets," and that Andrews' conduct in "pulling out the items from his pocket

4

to show the Officer did not give the Officer *any* form of consent to conduct a further search of [Andrews'] pockets himself." (Emphasis supplied.) It also found that the officer "did not ask for consent nor did [Andrews] give his consent."

Although the trial court may resolve any inconsistencies in the evidence and make credibility determinations, the trial court's factual finding that there was no consent asked for or given is clearly erroneous. The officer and Andrews both testified that Andrews consented to a pat-down search after the officer got out of his car and before the officer patted Andrews down.[1] The parties dispute, however, whether Andrews' consent to the pat-down encompassed the officer's further intrusion into his pocket to retrieve the cocaine.

With this in mind, the State contends on appeal that the search was based on a valid consent that Andrews gave to the officer. It further contends that the scope of the consent to search was for anything illegal, and that the trial court erred in finding

---

[1] We are highly cognizant that credibility determinations made by the trial court should ordinarily be deferred to by this Court upon appellate review, and we do not, in this instance, substitute our own credibility determination as to the consent. But as it is undisputed that Andrews consented to a pat-down search, we need not accept clearly erroneous factual findings in undertaking our review. See *State v. Peterson*, 273 Ga. 657, 661 (3) (543 SE2d 692) (2001).

5

that Andrews' consent was limited to the items he voluntarily removed from his pockets.[2]

In a first-tier encounter, "police may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave." *Carrera v. State*, 261 Ga. App. 832, 834 (584 SE2d 2) (2003). A request to search during a first-tier encounter does not require articulable suspicion. Id at 833.

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons pursuant to *Terry*; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

(Citation and punctuation omitted.) *State v. Cosby*, 302 Ga. App. 204, 205 (690 SE2d 519) (2010). Moreover, "[a]n officer need not conclusively identify what type of drug

---

[2] The trial court found that "[e]ven though [Andrews] voluntarily pulled items from his pocket, the Officer's own search of [Andrews] would have exceeded the parameters of any consent of [Andrews] to show the Officer what was in his pocket."

6

the defendant was carrying in order for the 'plain feel' doctrine to make the seizure of the contraband lawful." (Citation and punctuation omitted.) *Dunn v. State*, 289 Ga. App. 585, 586 (1) (b) (657 SE2d 649) (2008).

Likewise, when a defendant consents to a pat-down search, such consent extends to that authorized by the parameters of a search under *Terry*. Thus, the suspect's consent would extend to those items already authorized by the officer's search for weapons pursuant to *Terry*, including any contraband discovered under the plain feel doctrine. See *Springsteen v. State*, 206 Ga. App. 150, 152-153 (424 SE2d 832) (1992) (officer authorized to reach into suspect's pants pockets upon feeling a bulge where the suspect had responded to a request for consent to search by responding "okay," and voluntarily assumed a search position). Compare *Foster v. State*, 285 Ga. App. 441, 443-444 (646 SE2d 302) (2007) (when officer asked suspect to consent to a search for weapons, officer was not authorized to remove the contents of the suspect's pockets unless he came upon something that felt like a weapon or an object immediately identifiable as contraband).

Here, it is undisputed that the officer asked for, and Andrews gave, consent to a pat-down search. Further, the officer testified that he asked Andrews to consent to a pat-down because it was "1:15 in the morning, it's dark outside, we are in a high

crime area.. . . [and] I patted him down for my safety." He further testified that when he patted Andrews down he felt a "hard chunky substance" that he believed "[b]ased on [his] experience" to be contraband, specifically crack cocaine. "As a result, the [officer] was authorized to remove the bag from [Andrews'] pocket." *Dunn*, 289 Ga. App. at 587 (1) (b).

In this circumstance, the officer's search did not exceed the scope of the consent given, and, thus, the trial court erred in granting Andrews' motion to suppress.

*Judgment reversed. McFadden and McMillian, JJ., concur*.