**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 5, 2013**

# In the Court of Appeals of Georgia

A13A0054. MORRIS v. THE STATE.

McFADDEN, Judge.

Vincent Troy Morris was convicted of criminal street gang activity, criminal attempt to commit armed robbery, two counts of aggravated assault, and possession of a firearm during the commission of a felony. He appeals his convictions, arguing that the trial court erred in denying in part his motion to suppress; that the trial court erred in ruling that the state could use statements Morris made during proffer negotiations to impeach him, if he presented any evidence or defense that contradicted the proffer; and that he received ineffective assistance of counsel.

We find that the trial court did not err in denying in part Morris's motion to suppress because the comment about which he complains did not express a hope of benefit; that the trial court did not err in enforcing the proffer agreement; and that

Morris has not shown that trial counsel's performance was deficient. We therefore affirm Morris's convictions.

1. *The evidence supports the convictions.*

On appeal from a criminal conviction,

> the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Cordy v. State*, 315 Ga. App. 849 (1) (729 SE2d 13) (2012) (citation omitted).

So viewed, the evidence shows that Morris was a member of a gang that referred to itself as the International Robbing Crew or IRC, and which was engaged in numerous criminal activities, including robbery, burglary, and murder. On May 22, 2007, the gang, including Morris, intended to rob Randy Griffin. One car of gang members followed Griffin as he left a club to go home. A second car of gang members, including Morris, was lying in wait at Griffin's apartment complex. A gang member in the first car alerted the gang members in the second car that Griffin was approaching his residence. The gang members in the second

2

car, including Morris, engaged in a shootout with Griffin during which Griffin's girlfriend Lacey Magee suffered a gunshot wound to her hand. Morris and co-defendant Carlos Drennon were also shot. Meanwhile, the first car arrived just outside Griffin's complex as the shootout was occurring. In a panic, Randy Griffin ran outside the complex, entered the first gang car, and told the occupants that someone had tried to rob him and that his girlfriend had been shot. When the vehicle in which Morris was riding drove out of the complex, Griffin exited the first gang car and started shooting at the second vehicle as it drove away.

Drennon, the injured co-defendant, sought treatment at the same hospital as the victim Magee. While at the hospital, Griffin identified Drennon to police. Less than a month later, on June 10, 2007, three gang members encountered Griffin at a club and two of them shot and killed him.

At trial, several witnesses, including Atlanta Police Detective David Quinn and IRC member Marciell Easterling testified to the facts and circumstances of the IRC's criminal activities, corroborating Morris's participation in the attempted armed robbery of Griffin as well as the armed robbery and murder of Clarence Hargrave and the armed robbery and murder of Dwayne Osby. The state also admitted into evidence Morris's statement, in which he admitted to participating

3

in the Clarence Hargrave and Dwayne Osby murders, and a gun he had sold to a pawn shop and which ballistics tests showed had been used in the attempted armed robbery of Griffin. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find Morris guilty beyond a reasonable doubt of criminal street gang activity, OCGA § 16-15-4; criminal attempt to commit armed robbery, OCGA §§ 16-4-1, 16-8-41; aggravated assault, OCGA § 16-5-21; and possession of a firearm during the commission of a felony, OCGA § 16-11-106. *Jackson v. Virginia*, supra, 443 U. S. 307.

2. *The trial court did not err in denying Morris's motion to suppress.*

Morris moved to suppress in part the statement he gave to Detective Quinn and Agent Marcos Bess because, he argues, Agent Bess offered a hope of benefit. During the interview with Morris, Agent Bess said:

> We sitting here asking you about two murders and your role in it, man. Whatever you tell us, it ain't gonna make you no more or no less than what, what you got. You ain't gonna get no more charges from this interview, man, but you can – you can at least clarify what your role was and the extent of it.

The trial court denied the motion, rejecting Morris's argument that he was offered a hope of benefit.

4

"[W]hen we review the denial of a motion to suppress a statement, we owe no deference to the way in which the trial court resolved questions of law, but we generally accept its findings about questions of fact and credibility unless clearly erroneous." *Edenfield v. State*, __ Ga. __, __ (2) (__ SE2d __) (Case No. S13P0210, decided June 17, 2013) (citation and footnote omitted). An accused's statement to law enforcement is admissible only if the statement was voluntary, which "means that the statement must not have been induced by 'hope of benefit,' among other things. . . . As we have explained before, a 'hope of benefit' arises from promises related to reduced criminal punishment -- a shorter sentence, lesser charges, or no charges at all." Id. at __ (2) (citations and punctuation omitted). "The promise of a benefit that will render a confession involuntary . . . must relate to the charge or sentence facing the suspect. Generally, the 'hope of benefit' . . . has been construed as a hope of lighter punishment." *Sosniak v. State*, 287 Ga. 279, 286 (1) (B) (695 SE2d 604) (2010) (citation omitted).

Applying these principles to this case, we conclude that the "statement that there would be 'no [more] charges' . . . was made in the context of encouraging [Morris] to be truthful. . . . The detectives never promised or gave hope to [Morris] that he would receive a lighter punishment in exchange for a confession to the

5

crimes with which he was charged." Id. at 287. The trial court did not err in denying Morris's motion to suppress.

3. *The trial court properly enforced the proffer agreement.*

On February 11, 2008, Morris entered a proffer agreement with the District Attorney's Office. The agreement provided that if Morris

> subsequently [took] a position in any legal proceeding that [was] inconsistent with the proffer -- whether in pleadings, oral argument, witness testimony, documentary evidence, questioning of witnesses, or any other manner -- the [s]tate [could] use [Morris'] proffer statements, and all evidence obtained directly or indirectly therefrom in any responsive pleading and argument, and for cross-examination, impeachment, or rebuttal evidence.

Morris argues that the proffer agreement was unenforceable because it was superseded by a later-entered and withdrawn plea agreement. "[I]t does not appear that [Morris] preserved this issue for appellate review, insofar as our review of the record reveals that it was raised for the first time in his motion for a new trial." *Edenfield*, supra, __ Ga. at __ (9) (citation omitted).

Morris also argues

that the enforcement of this proffer agreement hindered his ability to challenge the [s]tate's case. This enumeration is without merit

6

because there is nothing in the record indicating that any evidence divulged pursuant to the [February] 2008 proffer agreement was presented at trial. [Morris'] November 2007 custodial interview, which was played to the jury at trial, pre-dated the proffer agreement and was not subject thereto. Accordingly, this enumeration of error fails to state any basis to reverse the conviction.

*Stevens v. State*, 286 Ga. 692, 694 (3) (690 SE2d 816) (2010) (involving one of Morris's co-defendants).

4. *Morris has not shown that trial counsel's performance was deficient.*

To prevail on his claim of ineffective assistance of counsel, Morris was required to show both deficient performance by trial counsel and actual prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). If Morris "fails to meet his burden of proving either prong, then we do not need to examine the other prong." *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009) (citation omitted).

(a) *Proffer agreement.*

Morris argues that trial counsel improperly advised him concerning the potential uses of the proffer agreement. Morris did not testify at the motion for

7

new trial hearing. Nor did the attorney who represented him at the time he entered the proffer agreement testify at the motion for new trial hearing. "In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Where trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome this presumption." *Russell v. State*, 269 Ga. 511 (1) (501 SE2d 206) (1998) (citations omitted).

The trial court expressly found that Morris entered the proffer agreement freely, knowingly and voluntarily, with the assistance of competent counsel. Absent his own testimony regarding his attorney's advice or the testimony of the attorney who allegedly failed to advise him, Morris has not overcome the presumption that counsel rendered reasonable assistance in advising him of the consequences of entering the proffer agreement, particularly given the trial court's explicit findings.

Morris also enumerates as error that trial counsel was ineffective for failing to object to the trial court's ruling regarding the use of the proffer agreement. Morris does not argue that the proffer agreement was unenforceable (other than to the extent it was superseded by the withdrawn plea agreement), and the trial

8

court found that Morris entered the agreement freely, knowingly and voluntarily, with the assistance of competent counsel. Therefore, the trial court did not err in enforcing the terms of the proffer agreement. See *United States v. Pielago*, 135 F.3d 703, 709 (11th Cir. 1998) ("The construction of proffer agreements, like plea agreements, is governed generally by the principles of contract law, as . . . adapted . . . for the purposes of criminal law.") (citations omitted); *Glover v. State*, 258 Ga. App. 527, 529 (574 SE2d 565) (2002) ("Public policy and the great ends of justice require that the arrangement between the public prosecutor and the defendant be carried out.") (citation and punctuation omitted). Consequently, counsel's failure to raise in the trial court the objections he now raises on appeal to the enforcement of the proffer agreement was not deficient performance. *McCoy v. State*, 285 Ga. App. 246, 249 (4) (b) (645 SE2d 728) (2007) ("failure to make a meritless argument does not constitute ineffective assistance of counsel") (citations omitted).

(b) *Trial counsel's failure to cross-examine witnesses*.

Morris argues that trial counsel inadequately cross-examined certain witnesses and failed to cross-examine key witnesses. Trial counsel testified at the motion for new trial hearing that after researching the issue extensively, he

concluded that even cross-examination of witnesses could trigger the proffer agreement. Therefore, as a matter of trial strategy, he chose not to cross-examine certain witnesses. "In general, a matter of reasonable trial strategy does not amount to ineffective assistance of counsel." *Vanstavern v. State*, __ Ga. __, __ (3) (a) (__ SE2d __) (Case No. S13A0409, decided June 3, 2013) (citation omitted). Morris has not shown that this strategy, particularly given the enforceability of the proffer agreement, was unreasonable.

(c) *Trial counsel's failure to object to the admission of a co-defendant's guilty plea.*

Morris argues that trial counsel was ineffective because he failed to object to the admission of Drennon's guilty plea. This claim is belied by the record, which shows that counsel did object to the admission of Drennon's plea.

As Morris has failed to show that trial counsel's performance was deficient, his ineffective assistance claims are without merit. *Gandy v. State*, 290 Ga. 166, 172 (4) (b) (718 SE2d 287) (2011).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*