**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 15, 2013**

# In the Court of Appeals of Georgia

A13A0652. TYRE v. THE STATE.

RAY, Judge.

After a jury trial, Arthur Tyre was convicted of rape, aggravated assault with intent to rape, armed robbery, and possession of a knife during the commission of a felony.[1] He appeals from the denial of his motion for new trial, asserting the following enumerations: that the trial court erred in (1) denying his *Batson* motion; (2) overruling his challenge to the array; (3) admitting similar transaction testimony; and (4) denying his motions to suppress. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence adduced at trial shows that

---

[1] Tyre was indicted with the additional charge of kidnapping, but a mistrial was granted on that charge.

the victim in this case[2] went with a friend on April 30, 2008, to Club Wax in Fulton County because they were seeking work as dancers there. The victim had worked as a prostitute in the past. While she was in the parking lot of Club Wax, Tyre pulled up to her in a silver Dodge Durango with custom rims and televisions in the back, and they agreed that Tyre would pay the victim $50 to engage in oral sex and sexual intercourse with him.

The victim got into Tyre's vehicle, and when she asked where he was driving, Tyre revealed a large kitchen knife with gray tape around it and told her to "shut up." Tyre then drove to the parking lot of a warehouse. After parking, Tyre took the victim's cell phones and instructed her to climb into the backseat of the vehicle and to remove her pants. Tyre then placed handcuffs on the victim, held a knife to her while she performed oral sex upon him, and then had intercourse with her. The victim testified that she did not consent to engage in intercourse. Tyre then exited the car, used a paper towel to cover his license plate, instructed the victim to get out of the car, and left without paying her. Still handcuffed, the victim ran to a nearby Waffle House where she called her friend, and they drove to Grady Memorial Hospital. A

[2]The victim's name is not being identified due to the nature of the offenses committed against her.

rape kit was performed at the hospital. Later, the victim identified Tyre from a photographic lineup. After the victim identified Tyre, police obtained a warrant for his arrest.

On May 4, 2008, the victim flagged down a police officer when she saw Tyre and his Dodge Durango at a gas station on Fulton Industrial Boulevard, near Club Wax. Tyre was arrested, and his car was impounded. On May 5, 2008, police obtained a warrant to search the vehicle, which revealed that the car had inside several "flip-type television[s]," condom wrappers, and a roll of paper towels. A large knife and a pair of handcuffs were found hidden inside the air conditioner registers.

K.L.[3] testified at trial as a similar transaction witness. K.L.testified that on February 8, 2008, a few months before Tyre assaulted the victim, that K.L. was on her way home from work when a silver Dodge Durango pulled up alongside her; the driver, Tyre, asked if she could give him directions to Club Wax. K.L. was giving directions to Tyre when she noticed him pointing a small pistol at her. Tyre then instructed her to get into the back seat of the vehicle. Tyre handcuffed K.L., placed duct tape over her mouth, placed a black shirt over her head, and strapped her in with

---

[3]The similar transaction witness' name is not being identified due to the nature of the offenses committed against her.

3

the seat belt. Tyre then began driving the Durango, and while traveling she heard him call someone on his cell phone and ask "have your mom left yet? . . . I got one. . . . I got somebody." After the vehicle stopped at a house, Tyre searched her purse, drove to a nearby ATM, withdrew $500 from her account, and threatened to shoot her. Once they returned to the house, Tyre and another man had oral sex and sexual intercourse with her against her will. Tyre then dropped her off at a Dairy Queen. K.L. called the police and went to Grady Memorial Hospital, where a rape kit was performed.

Approximately eight days later, KL saw the silver Dodge Durango at a Shell Station on Fulton Industrial Boulevard, memorized the tag number, and called the police. After detectives obtained a warrant for Tyre's arrest, a BOLO was put out on his car. On March 3, 2008, an officer stopped Tyre's car pursuant to an outstanding arrest warrant, removed Tyre from the car, and placed him under arrest in the back of his patrol car. The Dodge Durango was impounded, and an inventory search was conducted which revealed an airsoft pistol and handcuffs under the rear passenger seat, and a roll of gray duct tape.

Tyre testified at trial that the sexual acts he performed with the victim and K.L. were consensual commercial transactions and that the victim became angry when he

4

would not pay more than the agreed upon price. He admitted that he took money from K.L.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Tyre guilty beyond a reasonable doubt of rape, aggravated assault with intent to rape, armed robbery, kidnapping and possession of a knife during the commission of a crime. See *Jackson,* supra. See also OCGA §§ 16-6-1 (rape), 16-5-21 (aggravated assault with intent to rape) 16-8-41 (armed robbery), and 16-11-106 (possession of a knife during the commission of a felony). *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.") (Citation and punctuation omitted).

1. Tyre first contends that the trial court erred in finding that the prosecution did not violate *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986) when it used four peremptory strikes to remove black jurors and by denying his motion for new trial based on the *Batson* challenge. For the reasons that follow, we affirm.

A trial court

employ[s] a three-step analysis in addressing a defendant's *Batson* challenge. First, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. Then, the burden shifts to the proponent of the strike to provide a race-neutral reason for the strike. The trial court then decides whether the opponent of the strike has proven discriminatory intent.

(Footnotes and punctuation omitted.) *Cowan v. State*, 279 Ga. App. 532, 534 (2) (631 SE2d 760) (2006). Unless the trial court's decision was clearly erroneous, we shall not disturb the trial court's ruling. See Id.

The record reveals that Tyre is a black male, and that out of sixty potential jurors, sixteen were black. The State used a total of seven of its nine allotted peremptory strikes, and four of those seven were used against a black person.

Even assuming this indicates a prima facie case of purposeful discrimination, the record in this case supports the trial court's finding that the reasons offered for the State's strikes were race-neutral and not pretextual. See *Hernandez v. New York*, 500 U. S. 352, 360 (II) (B) (111 SCt 1859, 114 LE2d 395) (1991) (plurality opinion) ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.") In one instance, a prospective black juror was struck after she testified that her nephew had been convicted of murder. "Prior

6

convictions or arrest histories of a family members are a sufficiently race neutral reason to exercise a peremptory strike." (Citation omitted.) *Henry v. State*, 265 Ga. 732, 734 (2) (462 SE2d 737) (1995). Another prospective black juror was struck after he testified that he had previous bad experiences with law enforcement and that he believed that minorities were treated unfairly by the criminal justice system. Yet another prospective juror was struck after he testified that both he and his brother had been treated unfairly by police and the criminal justice system. This Court has held that a sufficiently neutral reason to justify a peremptory strike is available when a prospective juror has had a prior negative experience with law enforcement, or indicates that the juror may distrust the police. See *Crowder v. State*, 268 Ga. 517, 519 (4) (491 SE2d 323) (1997); *Dennis v. State*, 238 Ga. App. 343, 346 (5) (a) (518 SE2d 745) (1999). The final peremptory strike was used against a prospective black juror who testified that she had a friend who had been charged with murder and another who had been a victim of sexual assault. The State explained that it struck this prospective juror based upon these acquaintances and because her bag had the phrase "Jesus is the final answer" written on it, which indicated that she could be inclined to avoid judging others. Our Supreme Court has held that a strong religious

point of view is a valid race-neutral reason for striking a juror. See *Berry v. State*, 268 Ga. 437, 439 (2) (490 SE2d 389) (1997).

Because the State offered racially-neutral reasons for its strikes and Tyre failed to establish that the reasons given were pretexts for racial discrimination, we conclude that the trial court was authorized to find there was no *Batson* violation.

2. Tyre next argues that the trial court erred in denying his challenge to the array of the jury panels. He argues that there was a disparity between the percentage of black persons in the array sent to the courtroom for voir dire purposes and the percentage of black persons in the community. Finding no error, we affirm.

First, we note that "it is the pool of jurors from which the jury sent to be voir dired is *drawn* that must be representative of the community, not the individual panel sent to a courtroom for voir dire purposes." *Prine v. State*, 237 Ga. App. 679, 680 (1) (515 SE2d 425) (1999). "[T]he jury wheels, pools of names, panels, or venires from which juries are *drawn* must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." (Citations and punctuation omitted; emphasis supplied.) *Avery v. State*, 174 Ga. App. 116, 117 (1) (329 SE2d 276) (1985). In this case, Tyre's complaint was centered solely on the compositions of the single jury panel subject to voir dire in his particular case. Such

8

a complaint is defective. Accord *Lane v. State*, 239 Ga. App. 230, 230 (2) (b) (520 SE2d 705) (1999) ("[T]he Constitution does not guarantee that the jury impaneled in a particular case will be a representative cross-section of the community. The correct inquiry concerns the procedures for compiling the jury lists and not just the composition of a particular jury." (citations omitted.).

3. There was no abuse by the trial court in allowing the similar transaction evidence testimony of K.L. to be presented to the jury. After conducting a hearing in full compliance with the mandate of *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), the trial court found that the State had satisfied its burden in showing the following: (1) that the similar transaction sought to be introduced was perpetrated by Tyre; (2) that a sufficient connection existed between the acts alleged in the indictment and the transactions proffered so that proof of one tends to prove the others; and (3) that the similar transaction was offered for appropriate purposes of showing the defendant's bent of mind and course of conduct. Id. According to our review of the record, the trial court's finding was not clearly erroneous and, therefore, will not be disturbed on appeal. *Davis v. State*, 279 Ga. 786, 788 (3) (621 SE2d 446) (2005). We find no merit in Tyre's contention that the similar transaction evidence was overly prejudicial, as the trial court gave detailed limiting instructions when this

9

evidence was admitted. See *Farley v. State*, 265 Ga. 622, 625 (2) (458 SE2d 643) (1995) (similar transaction evidence determined to be relevant for a proper purpose should be admitted, and the prejudicial impact is a matter for jury instruction).

4. Tyre contends that the trial court erred in denying his motion to suppress evidence found in his car during a search after his arrest on March 3, 2008, as well as evidence found in his car during a search after his arrest on May 4, 2008.[4] When reviewing a trial court's order denying a motion to suppress,

> the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation omitted.) *State v. Andrews*, __ Ga. App. __ (740 SE2d 748) (2013).

---

[4]Apparently, Tyre was released on bond after the initial arrest even though it was claimed that he had raped the first victim.

10

(a) *Search incident to arrest on March 3, 2008.* Tyre objects to the trial court's denial of his motion to suppress the items found in his car after his arrest on March 3, 2008, after his car was impounded in connection with K.L.'s report to the police. This search revealed an airsoft pistol and handcuffs under the rear passenger seat, and a roll of gray duct tape. Tyre challenges the trial court's denial of his motion to suppress, arguing that "there was no testimony adduced . . . that the impoundment of [Tyre's] car was done pursuant to a policy of the police department or that his car was obstructing a roadway." Tyre is correct that at the hearing on the motion to suppress that the testifying officer merely stated that the items were found "when [the arresting] officer impounded the vehicle [and] conducted an inventory," and that there was no testimony presented as to whether it was police policy to impound a car after arrest. However, "[i]n reviewing a trial court's decision on a motion to suppress . . . we may consider all relevant evidence of record, wherever located, including evidence introduced at a suppression hearing *and* that introduced at trial." (Citation omitted; emphasis supplied.) *Jackson v. State*, 295 Ga. App. 427, 430 (3) (671 SE2d 902) (2009). At trial, the arresting officer testified that he stopped Tyre on the side of South Airport Road in Fulton County and that an inventory of the vehicle was conducted as part of the vehicle's impoundment. He testified that it is "customary"

11

for police to inventory any articles in a vehicle incident to the vehicle being impounded to protect the police against liability if anything were to go missing between the time of impoundment and the time the vehicle is retrieved by the owner.

We find that the trial court correctly denied Tyre's motion to suppress because the evidence was lawfully seized during an inventory search incident to impounding the car. Officers are sometimes permitted to impound a car, and when they do so, they may inventory its contents to protect the property of the owner and to protect the officers from potential danger and against claims for lost and stolen property. *Grizzle v. State*, 310 Ga. App. 577, 579 (1) (713 SE2d 701) (2011); *State v. Lowe*, 224 Ga. App. 228, 229 (480 SE2d 611) (1997). While officers cannot merely impound a car to search for contraband, they may impound a car if they must take charge of it for some legitimate reason. *Lewis v. State*, 294 Ga. App. 607, 611 (2) (669 SE2d 558) 2008. "The ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment." (Citation omitted.) Id. at 229-230. In this case, we find that impoundment was reasonably necessary because the owner of the car, Tyre, was under arrest and the car was parked on the side of the road. See *Scott v. State*, 316 Ga. App. 341, 344 (729 SE2d 481) (2012) (impoundment of defendant's

12

car was reasonably necessary when defendant and her companion were arrested and no one remained to remove car from the shoulder of an exit ramp). Compare *Canino v. State*, 314 Ga. App. 633, 641 (3) (725 SE2d 782) (2012) (impoundment of defendant's car and subsequent inventory of the car's contents were not reasonably necessary when defendant's car was legally parked in a shopping center parking lot and was not creating a hazard). We find no error.

(b) *Search subsequent to arrest on May 4, 2008.* Tyre next challenges the trial court's denial of his motion to suppress the items found in his car after his arrest in connection with victim's report to the police. He argues that because the State did not present a copy of the search warrant and supporting affidavit supporting the arrest at the suppression hearing, that the State failed to produce sufficient evidence that the search was made pursuant to a valid search warrant.

Under OCGA § 17-5-30 (b), "the burden of proving that [a] search and seizure were lawful shall be on the [S]tate." Typically, the State can satisfy this evidentiary burden "by production of the warrant and its supporting affidavit, and by showing either by those documents or by other evidence that the warrant is not subject to the statutory challenge alleged." (Citations omitted.) *Watts v. State*, 274 Ga. 373, 375 (2) (552 SE2d 823) (2001). At the suppression hearing, the officer testified that, after the

13

victim's positive identification of Tyre during a photo lineup, he personally obtained arrest warrants, had them signed by a judge, and placed them on the GCIC database. The search warrant and supporting affidavit were filed into the record on January 21, 2010, a month before the February 19, 2010, motion to suppress hearing. However, they were not introduced as evidence in the suppression hearing.

In *Bowman v. State*, 205 Ga. App. 347 (422 SE2d 239) (1992), this Court held that a defendant was not harmed by the State's failure to produce evidence at the outset of the suppression hearing when the warrant and supporting affidavit were in the record. This Court reasoned that because these documents were already in the record, the defendant "was not deprived of any opportunity to confront and cross-examine witnesses [about the contents of the supporting affidavit.]" Id. at 348. Here, because the testifying officer had personal knowledge concerning the existence of a valid search warrant and because the warrant and supporting affidavit were in the record prior to the suppression hearing, the State met its burden of producing evidence showing the validity of the warrant, and thus, the burden then shifted to Tyre to produce evidence supporting his challenge to the validity of the warrant. See *Davis v. State*, 266 Ga. 212 (465 SE2d 438) (1996). "In opposition to the evidence produced by the State, [Tyre] offered nothing. In this evidentiary posture, the [S]tate

14

met its burden of proof as a matter of law and the denial of [Tyre's] motion to suppress was mandated." (Citations and punctuation omitted.) Id.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*