**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 26, 2014**

# In the Court of Appeals of Georgia

A14A0409. RICHARDSON v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Leronza Lamar Richardson was convicted of possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and misdemeanor obstruction of an officer. He appeals, challenging the denial of his motion to suppress and the denial of his *Batson* motion. He also argues that he received the ineffective assistance of trial counsel. We find that the arresting officer's decision to detain Richardson was founded on a reasonable, articulable suspicion of criminal conduct and that the officer legally could frisk Richardson. We find that the state articulated race-neutral reasons for exercising its jury strikes. Finally, we find that trial counsel was not ineffective. We therefore affirm Richardson's convictions.

Viewed in the light most favorable to the verdict, *Morris v. State*, 322 Ga. App. 682, 683 (1) (746 SE2d 162) (2013), the evidence shows that the arresting officer, a deputy sheriff with the Houston County Sheriff's Office, was monitoring traffic on Interstate 75 when he saw Richardson's minivan fail to maintain its lane. The deputy signaled for Richardson to pull over. Richardson exited the highway, turned left onto the roadway, turned right onto another street, and then stopped at a gas station, about a mile from where the deputy had activated his lights. Richardson, the only person in the minivan, was extremely nervous. Richardson exited his minivan and told the deputy that he had panicked when he saw the deputy because he was driving on some type of limited permit. He said that he was returning to Moultrie from his job at Wendy's in Atlanta, three hours away, which did not make sense to the deputy. That, combined with Richardson's nervousness made the deputy suspicious that "some type of criminal activity was going on." Almost immediately, a backup officer with a drug detection dog arrived at the scene.

Within five minutes of Richardson stopping, while the backup officer was in the process of issuing a warning citation for failure to maintain lane, the deputy walked the drug detection dog around the minivan. The dog indicated the presence of contraband on the driver's side of the minivan. The deputy searched the interior

2

of the minivan, but found only an open container of alcohol. The deputy therefore believed that the drugs were on Richardson's person and had left an odor on the driver's side of the minivan, where Richardson had been sitting.

Richardson told the deputy that he was a convicted felon and on probation. The deputy asked Richardson for his license, and then made a telephone call to conduct a background check. The deputy learned that Richardson had been convicted of possessing a firearm as a convicted felon. While the deputy was checking Richardson's background, the backup officer drove off to another traffic stop; it is not clear at what point Richardson was given the warning citation.

The deputy finished his background-check phone call and then patted down Richardson, looking for weapons. The deputy was very concerned for his safety, given that he was alone with Richardson, that Richardson was so nervous, and the other circumstances, which included the unusual explanation of his travel, the firearm conviction and the drug dog's alert. During the pat-down search, the deputy felt what he immediately recognized to be contraband on the inside of Richardson's thigh. The deputy called for another backup officer, explaining that Richardson had drugs on him. Once that officer arrived, the deputy placed Richardson in handcuffs and then put him into the back of his patrol car. Richardson struggled with the deputy as the

deputy was trying to remove the contraband. The deputy was able to remove the contraband, fifteen bags of marijuana, a bag of crack cocaine, and a bag of powdered cocaine, all packaged for distribution, not personal use.

1. *The trial court did not err by denying the motion to suppress.*

"On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." *Wright v. State*, 294 Ga. 798, 801 (2) (756 SE2d 2014) (citation and punctuation omitted). This "means that we sustain all of the trial court's findings of fact that are supported by any evidence." *Ansley v. State*, 325 Ga. App. 226 (750 SE2d 484) (2013) (citation omitted). Because Richardson challenged the credibility of the deputy, "we do not apply a de novo standard of review, which applies only where the facts are undisputed." Id. at 227 (citation omitted). Compare *State v. Underwood*, 283 Ga. 498, 500-501 (661 SE2d 529) (2008) (applying de novo standard where evidence is uncontroverted and credibility is not challenged). Moreover, "we may consider all relevant evidence of record, wherever located." *Tyre v. State*, 323 Ga. App. 37, 42 (4) (a) (747 SE2d 106) (2013) (citation and punctuation omitted).

(a) *The detention after the initial traffic stop had ended*.

4

Richardson argues on appeal that the deputy unlawfully detained him after the initial traffic stop had ended. But Richardson did not raise this argument in his motion to suppress or at the hearing on the motion. He therefore has waived the argument. *Locher v. State*, 293 Ga. App. 67, 68-69 (1) (666 SE2d 468) (2008).

"In challenging a trial court's denial of a motion to suppress, a defendant may not argue on appeal grounds that he did not argue (and obtain a ruling on) below. Notwithstanding his waiver, however, [Richardson's] argument is unavailing." *Bryant v. State*, __ Ga. App. __, __ (__ SE2d __) (Case No. A13A2320, decided March 20, 2014) (citation omitted). As Richardson concedes, the backup officer was writing the warning citation while the drug dog sniffed around the minivan. In less than two minutes, the drug dog had alerted, indicating the presence of contraband. Accordingly, "there was no extension of the stop before officers received a basis independent of the traffic stop to investigate a reasonable suspicion that [Richardson was] in possession of contraband." *State v. Price*, 322 Ga. App. 778, 781 (746 SE2d 258) (2013). Moreover, Richardson had told the deputy that he was a convicted felon on probation and was driving on a limited permit, justifying the deputy's further investigation. See *Matthews v. State*, 294 Ga. App. 836, 839 (1) (b) (670 SE2d 520) (2008) ("[T]he information developed during the course of the valid traffic stop

5

provided a reasonable, articulable suspicion to prolong [defendant's] detention beyond the time reasonably required for completion of the traffic stop standing alone.") (whole court). Cf. *Weems v. State*, 318 Ga. App. 749, 752 (1) (734 SE2d 749) (2012) (after officer already had written a warning citation, further detention of defendant was unlawful where the only basis for officer's actions was the nervousness of defendant and the conflicting stories of defendant and passenger).

(b) *The pat-down search*.

Richardson argues that the pat-down search was unlawful because it was not supported by a reasonable belief that he was armed and dangerous. Only when a law enforcement officer reasonably believes someone possesses weapons may the officer conduct a pat-down search:

> A law enforcement officer, for his own protection and safety, may conduct a pat[-]down to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. A [police officer] making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. The purpose of this limited search is to allow the officer to pursue his investigation without fear of violence. The question is whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety was in danger.

*Jones v. State*, 237 Ga. App. 847, 849 (2) (515 SE2d 841) (1999) (citation and punctuation omitted). "[T]he prerequisite determination [is] that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a . . . protective pat-down would not be unreasonable in the given set of circumstances." *Edgell v. State*, 253 Ga. App. 775, 777 (560 SE2d 532) (2002) (citation omitted).

In this case, the trial court, which had the opportunity to observe the officer as he testified and to make a credibility determination,

> concluded that a pat-down [for] weapons was supported by the requisite facts. This [c]ourt does not weigh the evidence and cannot judge the credibility of witnesses. We conclude that the evidence before the trial court authorized the court to find that . . . the officer actually believed that [Richardson] posed a threat to the officer's personal safety and that such belief was reasonable considering all of the circumstances, including [the deputy's suspicion of Richardson's involvement with drugs and Richardson's prior conviction of a firearms offense].

*Santos v. State*, 306 Ga. App. 772, 775 (1) (703 SE2d 140) (2010) (citation omitted). See *Jones*, supra, 237 Ga. App. at 850 ("[W]e have repeatedly held that it is not unreasonable for officers to anticipate that those who are suspected of involvement

7

in the drug trade might be armed. Firearms are tools of the drug trade.") (citations and punctuation omitted).

2. *The Batson challenge.*

Richardson argues that the trial court erred by denying his challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), because he proved that the state engaged in purposeful racial discrimination in its use of peremptory strikes.

Under *Batson*, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. *O'Connell v. State*, 294 Ga. 379, 380 (2) (754 SE2d 29) (2014) (citation omitted). At that point, "[t]he burden then shifts to the [s]tate to offer a race-neutral reason for the strike. Finally, the trial court must determine if the opponent of the strike has proven discriminatory intent. The trial court's ultimate finding in this regard is entitled to great deference on appeal." Id. To satisfy its burden to offer a race-neutral reason for the strike, the state

> need only articulate a facially race-neutral reason for the strike. Step two does not demand an explanation that is persuasive, or even plausible. At this second step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

8

*Toomer v. State*, 292 Ga. 49, 54 (2) (b) (734 SE2d 333) (2012) (citing *Purkett v. Elem*, 514 U. S. 765, 768 (115 SCt 1769, 131 LE2d 834) (1995); punctuation omitted). The articulated reason need not be concrete, tangible, specific, or even case-related. *Toomer*, supra, 292 Ga. at 54 (2) (b). "The explanation for the strike only needs to be facially race-neutral." Id. (citation omitted). See also *Rose v. State*, 287 Ga. 238, 241 (695 SE2d 261) (2010) ("Although a striking party's explanation for the exercise of a peremptory strike may be superstitious, silly, or implausible, the striking party's burden is satisfied as long as the articulated reason is race or gender-neutral.") (citation omitted).

The state concedes that Richardson made a prima facie showing of racial discrimination. But it argues that it offered race-neutral reasons for the strikes, which the trial court was authorized to accept and did accept, denying the *Batson* challenge. Richardson focuses on the state's strike of two jurors, jurors Jackson and Greene.

The assistant district attorney explained that she struck juror Jackson because "[h]e raised his hand when [she] said, who doesn't want to be here. He started to raise his hand. He was also a witness for a defendant in the criminal court, the military court, and [she and co-counsel were] concerned about his bias." Richardson argues that this explanation "strains credibility." But even if the "prosecutor's explanations

9

[are not] compelling, . . the trial court's ultimate finding is entitled to great deference on appeal, and [Richardson] has not demonstrated that it was clearly erroneous." *Toomer*, supra, 292 Ga. at 58 (2) (d) (citation omitted).

The assistant district attorney explained that she struck juror Greene because "[s]he's a distribution manager. [The assistant district attorney and co-counsel were] not sure how much education [juror Green] has. She also appeared to be nervous. [Co-counsel] was watching as [the assistant district attorney] was speaking with the jury and he felt that [Greene's] demeanor was ---" Co-counsel elaborated that juror Greene "was kinda nervous. She trembled and finally toward the end she turned around, took her sweatshirt and made it like a snuggie and relaxed up against the back wall not paying attention." The assistant district attorney added, "And for the record, it's not cool in here." "A peremptory strike based on a juror's demeanor during voir dire may be deemed to be race-neutral." *O'Connell*, supra, 294 Ga. at 381 (2). (citation omitted).

"In light of the [s]tate's race-neutral reasons for striking [the two jurors], and giving great deference to the trial court's ultimate finding that [Richardson] failed to prove discriminatory intent, we perceive no error in the denial of [Richardson's] *Batson* challenge." Id. (citation omitted).

10

3. *Ineffective assistance of counsel*.

Richardson argues that trial counsel was ineffective for failing to argue in his motion to suppress that the traffic stop was unlawfully prolonged. However, we have already determined that the stop was not unlawfully prolonged. The"failure to pursue . . . a meritless argument does not constitute ineffective representation by counsel." *Walker v. State*, 294 Ga. 851, 855 (4) (b) (__ SE2d __) (2014) (citation omitted).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur*.