A01A1879. HARRIS v. THE STATE.
(557 SE2d 452)

RUFFIN, Judge.

A jury found Ricky Harris guilty of two counts of aggravated battery and one count each of aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. Harris appeals, asserting, among other arguments, that he is entitled to a new trial because he received ineffective assistance of counsel. We agree and accordingly reverse and remand the case for a new trial.

Harris' convictions stemmed from an ongoing dispute he had with the victim, Stanley Hughley, that ultimately resulted in a shooting. Harris apparently believed that Hughley was having a secretive relationship with Harris' girlfriend. On the day of the shooting, Harris telephoned Hughley's wife at work and told her about the relationship. According to Hughley, Harris also called him at home, threatening him and telling him that he wanted to meet at a nearby ballpark. Harris disputed Hughley's description of the phone call, claiming that Hughley made the threats.

After Hughley and Harris ended their phone conversation, Hughley picked up his cousin, Edward Alexander, because they were to go fishing. On the way to the bait shop, however, Hughley and Alexander stopped by the ballpark to look for Harris. Harris was there with his brother, Tyrone White, waiting for Hughley. When Hughley saw Harris standing on the far side of the ballpark, he parked his truck, exited it, and walked in Harris' direction. It appears that Hughley and Harris approached each other in the park, but there was evidence depicting two different versions of what occurred next.

According to Hughley and Alexander, Alexander remained on the periphery while Hughley and Harris met in the middle of the ball field. When they were about ten feet apart, Harris pulled a gun from his pocket, shot once into the ground, and fired a second time, hitting Hughley in the side. In contrast, Harris and White testified that all four individuals walked to the center of the field and that, as they approached each other, Alexander pulled a gun. White claimed that he, too, had a gun that day and stated that when he saw Alexander's gun, he pulled his pistol from his pocket and fired into the ground. White testified that he and Alexander then exchanged shots and that

Hughley was hit in the crossfire.[1] Both Harris and White testified that Harris did not have a gun. The jury apparently believed Hughley and Alexander's version and found Harris guilty of the charged offenses arising from the shooting.

1. To support its charge of possession of a firearm by a convicted felon, the State presented evidence showing that, in 1993, Harris was convicted of felony possession of cocaine with intent to distribute. Harris asserts that proof of the conviction improperly placed his character in evidence. He further contends that trial counsel was ineffective because she failed to move that the trial court bifurcate the trial of the possession of a firearm by a convicted felon charge and the other charges in accordance with *Head v. State*.[2] We agree.

For Harris to prevail on his ineffective assistance claim, he "must show (1) that his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."[3]

The evidence presented at the hearing on Harris' motion for new trial shows that trial counsel's representation concerning evidence of the prior felony conviction fell below an objective standard of reasonableness. At the hearing, trial counsel testified:

> I can't at this time looking at the file think of any reason not to [move for bifurcation]. It would be . . . standard practice to do that to keep character out. There was no . . . reason that the State could have got that in legitimately as part of this case; that was apparently a drug case, had nothing to do with this. And so I have no reason for doing that.

Counsel further testified that the State usually moves for bifurcation and that, if it does not, "the defense makes the motion."

As trial counsel pointed out, when the State introduced evidence of Harris' prior felony conviction, it clearly placed his character in evidence. Harris' prior drug-related felony conviction was totally irrelevant to all the charges for which he was being tried in this case, except the charge for possession of a firearm by a convicted felon. Introduction of the evidence unnecessarily showed Harris' "bad character and propensity to commit a crime."[4] It is clear that, under

---

[1] While cross-examining White, the prosecutor showed that, at a prior hearing, White initially denied having a gun, but then admitted having a gun.

[2] 253 Ga. 429 (322 SE2d 228) (1984).

[3] (Punctuation omitted.) *Harris v. State*, 234 Ga. App. 126, 129 (3) (505 SE2d 49) (1998).

[4] (Punctuation omitted.) *Head*, supra at 430 (1) (quoting *Panzavecchia v. Wainwright*, 658 F2d 337, 341 (5th Cir. 1981)).

*Head,* absent a compelling reason to do otherwise, trial counsel should have moved the trial court to bifurcate the trial so that the jury could consider whether Harris committed the other offenses before hearing proof of the firearm possession offense and without the taint of bad character evidence.[5]

That is not the end of our inquiry, however, because we still must determine whether Harris was harmed by counsel's deficient performance.[6] Several factors lead us to conclude that he was. First, although the prior felony conviction evidence was admissible to prove the firearm possession offense, the jury was never told that it should limit its consideration of the evidence to that offense.[7] Thus, the jurors likely felt free to consider the evidence for whatever purpose they saw fit, including improperly judging Harris' character and credibility.[8] Indeed, in charging the jurors on witness credibility, the trial court instructed them that they could

> consider [witness] credibility insofar as it may legitimately appear from the trial of the case. . . . [I]f you find a conflict [in the evidence] you should settle this conflict, if you can, without believing that any witness made a false statement. If you cannot do this then you should believe that witness or those witnesses you think best entitled to belief. You must determine what testimony you will believe and which ones you do not believe, if there are some you do not believe.

Considering this charge, along with the absence of a limiting instruction, it is reasonable to suspect that the jurors, faced with two conflicting versions of the shooting, chose to believe the account of the victim rather than the convicted felon.[9]

In addition, although Hughley's account of the shooting was corroborated by his cousin, the evidence of Harris' guilt was not overwhelming. Again, Harris denied he had a gun, and his brother,

---

[5] See id. at 431-432 (3); see also *Foote v. State,* 188 Ga. App. 304, 305 (372 SE2d 843) (1988); compare *Harris,* supra (counsel and defendant agreed not to move for bifurcation as part of trial strategy).

[6] See *Harris,* supra; *Foote,* supra.

[7] See *Head,* supra at 431 (2) (finding that "[t]here were no limitations imposed by the trial court as to the use to which the jury properly might put the evidence of prior convictions"); compare *Prince v. State,* 264 Ga. 867, 868-869 (3), (5) (452 SE2d 497) (1995) (finding that defendant was not harmed by counsel's failure to move for bifurcation because the trial court instructed the jury on the limited purpose of the prior felony evidence); *Foote,* supra (same).

[8] See *Head,* supra at 431, n. 1.

[9] See id.; *Barnett v. State,* 215 Ga. App. 46, 47 (2) (449 SE2d 651) (1994) (finding that "the introduction of evidence of prior convictions without proper limiting instructions placed defendant's character squarely in evidence, and may have influenced the jury to convict him based on his bad character and propensity to commit a crime").

White, testified that he was the one who fired in Hughley's direction. Thus, the case essentially boiled down to a question of credibility between two adversaries who were admittedly engaged in an ongoing feud and whose conflicting stories were essentially corroborated only by the close allies that joined them at the confrontation.[10]

Finally, contrary to the State's argument, the evidence of Harris' prior felony conviction was more than just a passing reference. Though the prosecutor spent little time during the trial introducing the evidence, the certified copy of the conviction was the sole exhibit to go out with the jurors during their deliberations. Thus, the exhibit had a captive audience of jurors who were constantly reminded, as they were considering Harris' guilt, that, as a convicted felon, he was a person of bad character with a propensity to commit crimes.[11]

Under these circumstances, we cannot say with certainty what impact trial counsel's performance had in this case. We can say, however, that there is a reasonable probability that, but for her failure to move for bifurcation, the results of the trial would have been different.[12] Accordingly, Harris is entitled to a new trial.[13]

2. In view of our holding in Division 1, we need not address Harris' remaining enumerations of error.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED DECEMBER 10, 2001.

*Sullivan & Sturdivant, Harold A. Sturdivant, Ryan M. Reid,* for appellant.

*William T. McBroom III, District Attorney, Mark M. Irvin, Assistant District Attorney,* for appellee.

---

[10] See *Head,* supra; compare *Foote,* supra (overwhelming evidence of guilt); *Graham v. State,* 185 Ga. App. 617, 619 (2) (365 SE2d 482) (1988) (same).

[11] See *Head,* supra at 431 (2) (finding that introduction of prior felony evidence had "nothing to do with any element of [the other charges], except the forbidden (albeit perhaps the most illuminating) realm of character and propensity for violent crimes"); see also *Barnett,* supra.

[12] See *Head,* supra; *Harris,* supra; *Barnett,* supra.

[13] See *Head,* supra; *Barnett,* supra at 47-48.