**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 25, 2015**

# In the Court of Appeals of Georgia

A15A1044. FONTAINE v. THE STATE.

BARNES, Presiding Judge.

A jury found Michael Gene Fontaine guilty of possession of chlorophenylpiperazine, methamphetamine, morphine, and oxycodone; possession of methamphetamine with intent to distribute; two counts of possession of a firearm during the commission of a felony; and possession of a firearm by a convicted felon. Following the denial of his motion for new trial, Fontaine appeals, arguing that the trial court erred by denying his motion to suppress, that he received ineffective assistance of counsel, and that some of his convictions should have merged. Although Fontaine's first two claims of error lack merit, we agree with his merger argument. Accordingly, we vacate his sentence and remand for resentencing.

Viewed in the light most favorable to the verdict, see *Morris v. State*, 322 Ga. App. 682 (1) (746 SE2d 162) (2013), the record shows that Agent David Gilleland of the Walker County Sheriff's Department went to a Best Western in Fort

Oglethorpe to investigate a report of a possible methamphetamine lab in room 101. He did not have a search warrant. Gilleland knocked on the door of room 101, and Fontaine answered. Gilleland told Fontaine why he was there and asked for permission to search the room, which Fontaine gave. Upon entering the room, Gilleland saw a woman, later identified as Margaret Hoodenpyle, lying on the bed and a second man, identified as Jeffrey Williams, in the bathroom. Gilleland directed Fontaine, Hoodenpyle, and Williams to the sitting area at the front of the room while he searched the bathroom area.

Gilleland went immediately to the trash can located under the sink because a hotel trash can is "a common hiding place." He picked up the trash can and found it "oddly heavy," so he removed the bag. Under the bag, wrapped inside a shirt, Gilleland found a handgun, a digital scale (commonly used to weigh drugs), and a number of Ziploc bags (commonly used to transport drugs). He also found pills and other substances that later tested positive for chlorophenylpiperazine, methamphetamine, morphine, and oxycodone.

While Gilleland was searching the trash can, Agent Dewayne Brown of the Walker County Sheriff's Department entered the room and searched the rest of it. Brown found a glass pipe containing methamphetamine residue between the two

mattresses on the bed and a plastic coffee mug with a digital scale hidden in a compartment in the bottom. Brown also found a digital camera containing images of a man's hands inserting a glass pipe into a woman's vagina.

Gilleland arrested Fontaine, searched him, and found $714 in cash inside his wallet. Gilleland read Fontaine his Miranda rights, which Fontaine waived. Fontaine then told Gilleland that he had met Williams and Hoodenpyle at the hotel earlier that day "in order to have a threesome exchange for methamphetamine." When Gilleland asked if Fontaine was selling drugs, Fontaine said, "[Y]ou found them." Fontaine also told Gilleland that he had "swapped the firearm for methamphetamine."

Williams, who later pled guilty to possession of methamphetamine, testified that he had taken the pictures on the digital camera, and he identified Fontaine and Hoodenpyle as the people in the pictures. (In a similar vein, Brown testified that the tattoos on the hands of the man in the pictures matched the tattoos he saw on Fontaine's hands.) Williams further testified that he and Hoodenpyle had had sex with Fontaine at the hotel that day, though he denied that the sex had been planned in advance.[1]

---

[1] Williams testified that he and Hoodenpyle had gone to the hotel to exchange a car tag and wound up having sex with Fontaine "just out of casual conversation." Brown, however, testified that Williams had said that "they were there to have sex

3

1. Fontaine argues that the trial court erred by denying his motion to suppress because Gilleland's foray into the trash can exceeded the scope of the consent he had given, rendering the search invalid and tainting his subsequent custodial statements.[2] "The intrusiveness of a consensual search – including the type, duration, and physical zone of the intrusion – is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken." *Walker v. State*, 299 Ga. App. 788, 791 (2) (683 SE2d 867) (2009). Fontaine maintains that he agreed only to let Gilleland look for a methamphetamine lab, not scour the hotel room for narcotics.

Pretermitting whether Fontaine's consent was limited to a search for a methemphetamine lab,[3] Gilleland's search did not exceed the reasonable scope of

---

with Mr. Fontaine . . . and repay would be given in narcotics."

[2] The trial court granted Fontaine's motion to suppress evidence found during a search of his car in the hotel parking lot.

[3] At the suppression hearing, Gilleland testified unequivocally that when he asked for permission to search the room, he told Fontaine he was investigating a report of narcotic activity. We have held that consent to search for drugs is consent to a "full-blown search," including the examination of items and containers. *Taylor v. State*, 230 Ga. App. 749, 751-752 (1) (e) (498 SE2d 113) (1998); see also *Varriano v. State*, 312 Ga. App. 266, (718 SE2d 14) (2011). But on cross-examination at trial, Gilleland agreed that he had told Fontaine he was there "on the possibility of an active methamphetamine lab," suggesting – according to Fontaine – a more limited search.

such a search. Although Fontaine argues on appeal that "a small trash can is unlikely to house an 'active methamphetamine lab,'" the evidence at the suppression hearing indicated otherwise. On cross-examination, the following exchange occurred between defense counsel and Gilleland:

Q: I know that Methamphetamine labs can be somewhat portable and small. I've seen them as small as like a two-liter bottle. I have heard of that before.

A. Yes.

Q: But I'm assuming that . . . the trash can that was there was a small size trash can like they typically keep in a motel room?

A: Average size for a hotel room, yes.

Q: Now, you didn't think at that point that there could be a Methamphetamine lab in that garbage can, did you?

A: Yes, sir. There could be a Methamphetamine lab in the garbage can.

Q: There could have?

A: Yes, sir . . . [W]e work quite a number of one-pot Methamphetamine labs which you were referring to in a two-liter bottle which is also done in 16-ounce or 20-ounce Mountain Dew, Coca-Cola bottles, such as that.

In light of this evidence that a small, portable methamphetamine lab could fit inside a hotel trash can, as well as Gilleland's trial testimony that trash cans are common

5

hiding places, the trial court did not err by denying Fontaine's motion to suppress. See *Richardson v. State*, 328 Ga. App. 519, 520 (1) (759 SE2d 630) (2014) (in reviewing a trial court's ruling on a motion to suppress, we construe the evidence most favorably to uphold the court's findings and judgment).

2. Fontaine contends that he received ineffective assistance of counsel because his lawyer failed to move to bifurcate his trial on Count 8 (possession of a firearm by a convicted felon) from the trial on the other charges. When a defendant is charged with possession of a firearm by a convicted felon along with other crimes, defense counsel should move to bifurcate the trial "absent a compelling reason to do otherwise" so that the jury can consider whether the defendant committed the other crimes "before hearing proof of the firearm possession offense and without the taint of bad character evidence." (Footnote omitted.) *Harris v. State*, 252 Ga. App. 849, 851 (1) (557 SE2d 452) (2001). In light of this well-established law, the State concedes that defense counsel's performance was deficient because he did not move for a bifurcated trial. See id.; *Vann v. State*, 266 Ga. App. 238, 240-241 (1) (596 SE2d 722) (2004).

To prevail on his ineffective assistance claim, however, Fontaine must show not only that counsel's performance was deficient, but also that "the deficiency so

6

prejudiced him that, but for counsel's errors, the outcome of the trial likely would have been different." (Citation omitted.) *Love v. State*, 305 Ga. App. 573 (1) (699 SE2d 872) (2010). The record shows that despite defense counsel's failure to make a motion, the court nevertheless bifurcated the trial so that the jury considered the evidence in support of Count 8 only after it had returned a verdict on the other charges. Thus, the jury's consideration of the other charges was not tainted by unfavorable character evidence.

Fontaine nonetheless claims that he was prejudiced because the prosecutor read aloud a portion of Count 8 of the indictment, which listed Fontaine's prior convictions , to the prospective jurors during voir dire. Voir dire was not transcribed , but at the hearing on Fontaine's motion for new trial more than two years later, the prosecutor and defense counsel tried to reconstruct what had happened. They agreed that the prosecutor had begun reading Count 8, but the court had interrupted, called the attorneys to the bench, and told the prosecutor to stop so as not to taint the jury.[4]

---

[4] The trial transcript shows that defense counsel later requested that the jury be polled because a juror apparently had asked whether Fontaine had any prior convictions. Neither that question nor the court's response to it was transcribed. Although the question indicates that at least one juror may have noticed that the prosecutor had begun reading Count 8, it also suggests that he did not read the entirety.

At the conclusion of the motion for new trial hearing, the trial court ruled that there was no evidence that the jury had heard any information about Fontaine's prior convictions, and it denied the motion. "The burden is on the party alleging error to show it affirmatively by the record, and when he does not do so, the judgment is assumed to be correct and must be affirmed." (Footnote and punctuation omitted.) *Gordillo v. State*, 255 Ga. App. 73, 75 (3) (564 SE2d 486) (2002). In light of the lawyers' uncertainty about how much of Count 8 was read aloud, the record does not permit a presumption that the jury was tainted.

Moreover, the State presented a highly compelling case against Fontaine. Police found methamphetamine and other drugs, multiple digital scales, and baggies in a hotel room that he had rented; a large amount of currency in his wallet; and a picture of him inserting a methamphetamine pipe into Hoodenpyle's vagina. Fontaine and Williams both told police that Williams and Hoodenpyle had gone to the hotel to have sex with Fontaine in exchange for drugs. And when Gilleland asked Fontaine whether he was selling drugs, Fontaine replied, "[Y]ou found them." Due to this overwhelming evidence of Fontaine's guilt, it is highly probable that the reading of some portion of Count 8 of the indictment to the jury did not contribute to the verdict.

See *Williams v. State*, 312 Ga. App. 693, 695 (2) (2011); *Nickerson v. State*, 248 Ga. App. 829, 832 (2) (a) (545 SE2d 587) (2001).

3. Fontaine argues that the trial court erred by failing to merge Count 3 (possession of methamphetamine) into Count 2 (possession of methamphetamine with intent to distribute) because the former is included in the latter as a matter of fact. Fontaine also contends that the court should have merged Counts 6 and 7, the gun possession charges associated with Counts 2 and 3. See, e.g., *Bryan v. State*, 271 Ga. App. 60, 65 (4) (608 SE2d 648) (2004) (defendant's convictions of manufacturing methamphetamine, possessing it, and possessing it with intent to distribute merged as a matter of fact because "the different offenses are proven with the same facts"). The State agrees, but claims that the trial court has already corrected this error by entering an order amending the sentence to reflect the required merger.

That corrective order, however, was entered three months after Fontaine filed his notice of appeal. A trial court lacks jurisdiction to modify a sentence after the filing of a notice of appeal, and any such modification is a nullity. *Brock v. State*, 166 Ga. App. 649 (1) (305 SE2d 180) (1983); see also *Scroggins v. State*, 288 Ga. 346, 347 (filing of notice of appeal deprives trial court "of the power to affect the judgment appealed, so that subsequent proceedings purporting to supplement, amend,

9

alter or modify the judgment . . . are without effect") (citation and punctuation omitted). Because the trial court's order purporting to modify Fontaine's sentence is without effect, the sentence must be vacated and the case remanded for resentencing in accordance with this opinion.

*Sentence vacated and case remanded for resentencing in accordance with this opinion. Ray, J., and McMillian, J., concur.*